STATE of Tennessee, Appellee,

v.

Harold Vernon SMITH, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

June 11, 1982.

Permission to Appeal Denied by the Supreme Court Sept. 7, 1982.

C. Dwaine Evans, Mindy Seals, Morristown, for appellant.

William M. Leech, Jr., Atty. Gen., Steven A. Hart, Asst. Atty. Gen., Nashville, Heiskell H. Winstead, Dist. Atty. Gen., Rogersville, Edward H. Moody, Asst. Dist. Atty. Gen., Morristown, for appellee.

## OPINION

SCOTT, Judge.

The appellant was convicted of five counts of armed robbery and his punishment was fixed at ten years in the state penitentiary on each count. He was also found to be an habitual criminal and his punishment was enhanced to life imprisonment. Much aggrieved by the verdict, the appellant has presented seven issues for our consideration. In the first he questions the sufficiency of the convicting evidence.

On October 27, 1980, shortly before 5:43 P.M., the appellant and another man held up Stinson's Drug Store in Bulls Gap. At the time they entered the store James W. Stinson, a registered pharmacist and the owner of the store, was on duty behind the prescription counter. His wife, Jean Stinson, their son, James Michael Stinson, and his wife, Cathy Stinson, were also on duty in the family business. During the robbery, a customer, Carl Hawkins, entered the store and was also robbed.

When the men entered the store, Mrs. Jean Stinson immediately recognized the appellant. She had known him for twenty-two years and had watched him grow up.

As a youngster he had bought toys in their store.

The men donned ski masks, and at gunpoint, forced all of the people to lie down in the floor. Their hands and feet were taped with duct tape. As the appellant tended to the other employees and the customer, his accomplice demanded various drugs from the pharmacist in the manner of one reading from a shopping list. As the names of various drugs were called, the pharmacist was required at gunpoint to find the various drugs on the shelves and to place them in a plastic garbage bag. The men then took the day's receipts from the store totalling $1,478.57 and the wallets from each of the victims. They escaped by taking Mr. James W. Stinson's station wagon which they abandoned at nearby McCullouck Cemetery, switching to the appellant's Chevrolet Monte Carlo automobile.

On October 28, 1980, Knoxville police officers, unaware of the Stinson Drug Store armed robbery in Hawkins County, were searching for the appellant who was an escapee from Brushy Mountain State Penitentiary. They received a tip that he would be in the Magnolia Avenue area of Knoxville. Four officers were riding around looking for him. He was spotted standing on the second floor balcony of the Magnolia Motel. One of the officers had known the appellant since high school days and recognized him on sight. When the officers stopped in the motel parking lot, the appellant jumped off the second floor balcony and fled on foot. They caught him about two and one-half blocks away.

When asked for his identification, the appellant identified himself as Roger Meyers and showed Roger Meyers' driver's license. The officers knew that Mr. Meyers' residence had recently been burglarized. In his billfold the appellant also had a variety of James W. Stinson's credit cards and James Michael Stinson's credit cards and identification cards. These included James Michael Stinson's driver's license, social security card, Selective Service card, automobile insurance identification card, bank electronic identification card, voter registration card, and an OSHA card. A bottle of various pills was found in one of his pockets.

When the officers brought the appellant back to the motel he was standing by a 1973 Chevrolet Monte Carlo in which the officers could see a bag containing a number of items. A gun was sticking out of the bag. When the officers inquired as to whether they could search the car, he replied, "certainly". Their search revealed two guns.

The appellant presented proof that he bought the pills and the credit cards from an unnamed person in late October. Only a witness to the transaction testified. Neither the appellant nor his mystery supplier took the stand.

■ A jury verdict of guilty, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in favor of the theory of the state. *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978). On appeal the state is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978).

There was ample, indeed overwhelming, evidence from which any rational trier of fact could find that the appellant was guilty of the armed robbery beyond a reasonable doubt. Rule 13(e), T.R.A.P., *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2786–2792, 61 L.Ed.2d 560 (1979). There was no attack on the sufficiency of the evidence that the appellant is an habitual criminal.

■ In the next issue the appellant contends that the trial judge erred in denying his pre-trial motion to suppress the items seized from his person. He contends that when he was first apprehended that he was patted down for weapons, and that there was no justification for the further search of his person, which revealed his wallet containing the credit cards stolen from the victims of the drug store robbery. The trial judge held that this was a proper search incident to a valid arrest.

It is well settled that a search incident to a valid arrest is an exception to the warrant requirement of the Fourth Amendment. *United States v. Robinson,* 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973). It is equally well settled that a warrantless arrest may be made in a public place upon probable cause, even without exigent circumstances. *United States v. Watson,* 423 U.S. 411, 417, 96 S.Ct. 820, 824, 46 L.Ed.2d 598 (1976), citing *Carroll v. United States,* 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543 (1925).

In this case law enforcement officers were aware that the appellant was an escapee from Tennessee's maximum security penitentiary. Escape from a penitentiary is a felony in violation of TCA § 39–3802. One of the officers searching for him recognized the appellant on sight. There was clearly probable cause to arrest him, and there can be no doubt that the arrest was, therefore, valid. The search of his person was, likewise, valid.

Despite the officer's knowledge of his identity, the appellant maintained that he was Roger Meyers even after he was arrested. A search of his wallet for identification was reasonable under those circumstances. See: *State v. Hlady,* 43 Or.App. 921, 607 P.2d 733, 734 (1979), citing *State v. Florance,* 270 Or. 169, 527 P.2d 1202, 1211–1212 (1974). This issue has no merit.

▪ In the next issue the appellant contends that the trial judge erred in denying his pre-trial motion to bring a witness from the penitentiary to testify in his behalf. According to the affidavit accompanying the motion, the appellant's attorney received a call from Doug Shelton, an inmate at Brushy Mountain State Penitentiary, who claimed that he had received letters from an individual, stating that the individual gave the credit cards and identification cards stolen at Stinson's Drug Store to the appellant. The trial judge denied the motion, noting that the evidence would be inadmissible because it was all hearsay, and that the evidence would be cumulative, since he had already ordered another person with personal knowledge about that information to be present to testify for the appellant. Larry Dew, the other person referred to by the trial judge, testified concerning the appellant's purchase of the pills and credit cards.

Although an accused in a criminal trial has a constitutional right to the compulsory attendance of witnesses under the Sixth Amendment of the United States Constitution, and Article I, Section 9, of the Constitution of Tennessee, the right to compulsory process is not unlimited. In *Bacon v. State,* 215 Tenn. 268, 385 S.W.2d 107, 109 (1964), the Supreme Court cited with approval the following statement from 97 C.J.S. (Witnesses), § 9, p. 358:

> A court is not required to issue compulsory process for any one whom accused may designate as a witness; the constitutional right to compulsory process requires such process for, and only for, competent, material, and resident witnesses whose expected testimony will be admissible. Within these limitations accused may obtain the attendance of any witnesses he cares to use.

Doug Shelton's testimony would have clearly been hearsay and, therefore, inadmissible. However, the appellant contends that Mr. Shelton's testimony was an exception to the hearsay rule, because the letter from the unidentified individual contained declarations against penal interest.

The declaration against penal interest exception is applicable to criminal cases in Tennessee. However, before hearsay declarations against penal interest made by an unavailable declarant are admitted, they must be proven trustworthy by "independent corroborative evidence that bespeaks reliability". *Smith v. State,* 587 S.W.2d 659, 661 (Tenn.1979), adopting the threshold test articulated by the Supreme Court of Minnesota in *State v. Higginbotham,* 298 Minn. 1, 212 N.W.2d 881, 883 (1973).

In this case the appellant offered no independent corroborative evidence which bespoke reliability to demonstrate the truthfulness of the out of court declarant's allegations in his letter. In the absence of such a

showing, the testimony about the alleged declaration against penal interest was inadmissible. The failure to subpoena Doug Shelton was not error, and this issue has no merit.

In the next issue the appellant contends that the trial judge erred by failing to grant a mistrial when the jury observed the appellant being led from the courthouse in handcuffs and chains during the lunch recess.

Due process requires that a criminal defendant be afforded the "physical indicia of innocence". *Kennedy v. Cardwell,* 487 F.2d 101, 104 (6th Cir. 1973). This Court has specifically condemned the trial of a criminal defendant in shackles in the absence of certain safeguards, one of which is an adequate instruction to the jury that the shackles must not influence either the issue of guilt or innocence or the issue of punishment assessment. *Willocks v. State,* 546 S.W.2d 819, 822 (Tenn.Cr.App.1976).

In *Rivera v. State,* 1 Tenn.Cr.App. 395, 443 S.W.2d 675, 679 (1969), this Court found no reversible error in an escapee being brought to the courtroom in handcuffs which were removed prior to trial. However, the record did not reveal that the jurors in that case actually saw the defendant as they obviously did in this case.

The trial judge recognized the problems involved in transporting defendants who are in custody, particularly in old courthouses which do not have separate entrances and exists for the prisoners away from the jurors and general public. When the jury returned from lunch, the trial judge gave an excellent and very extensive cautionary instruction that no inference was to be drawn from the fact that the appellant was seen in shackles. He pointed out that the charges were serious and that when individuals are charged with serious offenses they are more likely to be restrained because the bond may be higher or there may be no bond set. The judge explained that charges are just that and the state is required to prove its case beyond a reasonable doubt. He cautioned the jury that no inference can be drawn from the fact that a person was restrained, pointing out:

That because a person is restrained in handcuffs and/or chains doesn't mean that he's in any way any guiltier than somebody that was able to make bond and out on bond.

The trial judge polled the jury to determine how many saw the appellant (7 of the 12 did), and whether having seen the appellant in handcuffs and chains for a minute or less would cause them to have any different attitude about him than they would before they saw him. He also inquired as to whether it would affect their attitude toward guilt or innocence in the case.

The error flowing from the inadvertent viewing of the appellant in shackles by members of the jury was cured by the instructions and inquiries of the trial judge. It is assumed that the jury followed the trial judge's instructions. *State v. Barton,* 626 S.W.2d 296, 298 (Tenn.Cr.App.1981). This issue has no merit.

In the next issue the appellant contends that the prosecutor inferred that the police officers were searching for the appellant due to other charges pending against him. He contends that a mistrial should have been declared when one of the arresting officers testified that, at the time of the arrest in Knox County, he was unaware of the drug store robbery in Hawkins County. The trial judge again gave an excellent curative instruction as follows:

Members of the jury, the only thing that you can assume would be that the defendant was arrested on the charges that you're considering here today and nothing else being sought on those charges. You cannot make any other assumption other than that of any kind or consider it. He's being tried on these charges that you're considering of robbery here today and nothing else. All right.

Again, it is ordinarily assumed that the jury followed the trial judge's instructions. *Id.* In *State v. Scruggs,* 589 S.W.2d 899, 901 (Tenn.1979), a prospective juror was excused after stating on voir dire that he had been the defendant's probation officer.

Despite a curative instruction and overwhelming evidence of guilt, the Supreme Court reversed and remanded for a new trial. The Court found that the jury's reaction to the venireman's statement was not overcome by the evidence of guilt or the curative instruction. In that case, also an armed robbery, the Supreme Court noted that the range of punishment is ten years to life imprisonment. The jury fixed a term of twenty-five years in the state penitentiary, two and one-half times the minimum sentence. The Court noted that one possible basis for the severity of the punishment was the jurors' knowledge that Scruggs had been shown leniency upon conviction for an earlier criminal offense.

In this case the jury imposed the minimum sentence for each offense for which the appellant was convicted. In light of the curative instruction, the overwhelming evidence of guilt, and the minimum sentences meted out by the jury, any error from the mere implication that the appellant committed another offense was harmless error beyond a reasonable doubt, Rule 52(a), T.R. Cr.P., and did not affect the judgment or result in prejudice to the judicial process. Rule 36(b), T.R.A.P.

■■■ In the next issue the appellant contends that the trial judge erred in refusing to grant a mistrial when the prosecutor argued that the jury should lock the appellant up for a long time in order to protect themselves. The argument was as follows:

And this morning, you remember I asked you if you believed in self defense, that was that society or citizens of Hawkins County had the right to protect themselves from Harold Vernon Smith, if you believed that the citizens could lock a man up for a long time to protect themselves. And that's . . . I'm not only asking you to protect Mr. Carl Hawkins and Kathy Stinson and Jean Stinson and James Michael Stinson and James W. Stinson, I'm asking you in effect to protect yourselves.

Defense counsel objected to this argument and the trial judge promptly sustained the objection. The trial judge then commented:

They can't consider anything that he might do or . . . the only . . . what he has done, if anything, General.

In determining whether improper prosecutorial conduct could have affected the verdict, five factors must be considered:

1. The conduct complained of viewed in context and in light of the facts and circumstances of the case.
2. The curative measures undertaken by the court and the prosecution.
3. The intent of the prosecutor in making the improper statement.
4. The cumulative effect of the improper conduct and any other errors in the record.
5. The relative strength or weakness of the case.

*Judge v. State,* 539 S.W.2d 340, 344 (Tenn.Cr.App.1976).

Considering this isolated comment in light of the facts and circumstances of the case; the fact that curative instructions were given by the trial judge; the apparent intent of the prosecutor in making the improper statement; the fact that there were no other errors in the record; and the overwhelming strength of the state's case against the appellant, it is clear that this error does not rise to the level of reversible error. This issue has no merit.

■■ Finally, the appellant contends that the trial judge erred in allowing the state to introduce evidence that the appellant had a loaded .30 caliber "Enforcer" in his possession at the time of his arrest. He does not challenge the admission of a .38 caliber revolver found on the front seat of his car. His challenge to this gun is based on the fact that it is not a "blue-steel" gun such as the witnesses testified that he used. However, there was testimony by Mr. James W. Stinson that the accomplice used a "silver-plated automatic pistol". This was an automatic pistol, but does not appear to be silver-plated. The appellant relies on *Jones v. State,* 489 S.W.2d 44, 45–46 (Tenn.Cr. App.1972) for the proposition that this was

reversible error. In *Jones,* the armed robbery was committed with a shotgun and a .38 caliber revolver was introduced. This Court held that the revolver was "wholly irrelevant and immaterial to any issue in the case" and should not have been admitted. However, the Court found the error to be harmless.

This was an armed robbery in which the appellant and his accomplice were both armed with pistols. Evidence that he was armed with two pistols at the time of his arrest, even though one did not exactly fit the description of the robbery weapons, was relevant and, therefore, properly admitted. This issue has no merit.

Finding all of the issues devoid of merit, the judgment is affirmed.

WALKER, P. J., and DAUGHTREY, J., concur.