787 F.2d 593
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
HAROLD VERNON SMITH, Plaintiff-Appellant,
v.
M. C. HAMBY, Warden, and WILLIAM M. LEECH, Attorney General,
Defendants-Appellees.
 84-5685
 United States Court of Appeals, Sixth Circuit.
 3/26/86
 
 AFFIRMED
 M.D.Tenn.
 On Appeal from the United States District Court for the Middle District of Tennessee, Nashville
 BEFORE: JONES and WELLFORD, Circuit Judges; and GILMORE, District Judge.*
 PER CURIAM.
 
 
 1
 The appeal of the dismissal of this petition for writ of habeas corpus by a state prisoner raises three issues:
 
 
 2
 1. Whether appellant's right of fair trial was denied by virtue of the fact that 7 of 12 jurors saw him on the courthouse steps in shackles during trial;
 
 
 3
 2. Whether appellant was denied his Sixth Amendment right to compulsory process;
 
 
 4
 3. Whether there was sufficient evidence to convince a rational juror of his guilt beyond a reasonable doubt.
 
 
 5
 The district court denied the writ of habeas corpus, and we affirm.
 
 
 6
 Appellant was convicted on June 15, 1981 by a criminal court jury of five counts of armed robbery, and sentenced to 10 years on each count. The jury further found him to be an habitual criminal, and enhanced the punishment to life imprisonment. His convictions were affirmed on appeal--State v. Smith, 639 S.W. 2d 677 (Tenn. Cr. App. 1982). Leave to appeal was denied by the Tennessee Supreme Court on September 7, 1982.
 
 
 7
 Appellant filed a petition for habeas corpus in the United States District Court for the Eastern District of Tennessee in 1982. This petition was dismissed the same day, and subsequently that order was vacated and remanded by this Court, in Smith v. Davis, 82-5754 (6th Cir. Jan. 5, 1984), in an unpublished opinion, but the petition was later dismissed again for failure to exhaust.
 
 
 8
 Appellant dropped an unexhausted claim for relief, and the court's dismissal was entered on July 18, 1984. This appeal followed.
 
 
 9
 On October 27, 1980, two men held up a drug store in Bulls Gap, Tennessee. In the store at the time were the pharmacist and owner, James Stinson, his wife, and their son and daughter-in-law. One customer entered the store while the robbery was in progress. The robbers donned ski masks, and robbed the store and individuals at gunpoint, and then escaped in Mr. Stinson's car, which was later found abandoned along a nearby road. Two people testified at trial that they saw a blue Chevrolet Monte Carlo leaving the nearby road around the time of the robbery.
 
 
 10
 The next day, appellant was arrested in Knoxville by officers searching for him as an escapee from the Brushy Mountain State Penitentiary. In his possession was a 1973 Chevrolet Monte Carlo, which fit the description of the Monte Carlo leaving the area at the time of the robbery, and various items of personal identification, credit cards, and pills taken during the robbery, along with a handgun.
 
 
 11
 At trial, Mrs. Stinson was the only one to identify the appellant as one of the robbers. Her husband said he did see the face of the man with the pistol and he was not the appellant. Mrs. Stinson admitted at trial that she had refused to sign a statement prepared by the Tennessee Bureau of Investigation naming appellant as one of the robbers, and admitted that she had not seen appellant for some 10 years prior to the robbery.
 
 
 12
 Appellant did not testify at trial, but called a Larry Dew who testified that he saw a James Johnson drive up to appellant in a blue Monte Carlo late in October in Knoxville and hand him pills and credit cards in exchange for cash. Appellant also attempted to call a Douglas Shelton, an inmate at the Brushy Mountain Penitentiary, to corroborate this testimony. Appellant contends that Mr. Shelton would testify that he had letters from a third person (presumably James Johnson) confessing to the robbery and exonerating petitioner, and that these were admissible as statements against penal interests. The trial court refused to issue a subpoena for Shelton, citing both the hearsay problem and the likelihood that the testimony would be merely cumulative to that of defense witness Dew.
 
 
 13
 On the first day of trial, during the luncheon recess, appellant was taken down back steps of the courthouse handcuffed and chained. Some of the jurors observed this. When the court reconvened, appellant moved for a mistrial. The court polled the jurors and discovered that seven of them had seen appellant. At that point, the court gave a cautionary instruction, which said, inter alia:
 
 
 14
 That because a person is restrained in handcuffs and/or chains doesn't mean that he's in any way any guiltier than somebody that was able to make bond and out on bond (sic) . . .. Some people can make bond and some people can't make bond under the law.
 
 
 15
 The court then asked if any juror felt that the incident would affect his or her attitudes about the guilt or innocence of the appellant. All jurors indicated they would be able to set it aside, and it would not affect their view of his guilt or innocence. The court then denied appellant's motion for a mistrial. The trial continued, and appellant was eventually convicted.
 
 
 16
 * Appellant's first claim on appeal is that he was denied his right to a fair trial because 7 of 12 jurors saw him on the courthouse steps in shackles during the trial. He claims a due process violation, and cites Kennedy v. Cardwell, 487 F.2d 101 (6th Cir. 1973) as authority for reversal. We do not so read that case. There, the court conducted an extensive review of cases, including cases where defenda ts were seen in shackles in courthouses, and seemed to criticize cases that state that a brief and fortuitous incident is not prejudicial, and requires an affirmative showing of prejudice by the defendant. The court held that this view, to some extent, ignores reality.
 
 
 17
 Kennedy dealt with a defendant who remained shackled during trial, and held that generally an accused has a right to be tried in an atmosphere free of partiality created by the use of excessive guards, except under special circumstances. It does not control the problem here, namely the inadvertent viewing of a prisoner by some members of the jury as he was leaving the courthouse in shackles.
 
 
 18
 United States v. Chipman, 513 F.2d 1262 (6th Cir. 1975) is more on point in this case. There, the handcuffed defendant rode down in an elevator with the judge and two jurors at the end of the day. The next morning the judge interviewed the two jurors and excused the one who said she had mentioned the incident to the other jurors. The judge then polled the jury, and all said they would not have been prejudiced by such remark. The court stated:
 
 
 19
 In view of the remedial actions taken by the District Judge and the nature of the brief encounter with the jurors, we conclude that in this case, as in United States v. Crane, 499 F. 2d 1385 (6th Cir. 1974), the record shows no prejudice depriving defendant of a fair trial.
 
 
 20
 Id. at 1263.
 
 
 21
 We conclude that there was insufficient prejudice resulting from this chance incident to affect appellant's due process right to a fair trial, in light of the state trial court's thorough and careful cautionary instruction and his inquiry of the jury. He took the proper corrective action, and whatever prejudice the incident may have engendered was headed off, as shown by the jury's unanimous response to the court's question of whether they could put it aside.[1] Therefore, there is no basis for finding defendant was denied a due process right to fair trial because of this one incident.
 
 II
 
 22
 Appellant next contends that the court's denial of his motion for a writ ordering Shelton, an inmate at Brushy Mountain Penitentiary to testify denied him his Sixth Amendment right to compulsory process. The state trial court denied the motion on the basis that the proffered testimony regarding Shelton's receipt of letters from a third person saying that this person had given the stolen credit and identification cards to appellant would be inadmissible as hearsay, and would only be cumulative to the testimony of Dew, an eyewitness to the exchange of the cards.
 
 
 23
 Appellant concedes the anticipated testimony of Shelton would have been hearsay, but argues that it would have been admissible under the exception for statements against penal interest, which may be admissible if the declarant is unavailable. Appellant also contends that Shelton's testimony would not have been merely cumulative.
 
 
 24
 There was no question of the unavailability of the declarant, but Tennessee law requires that before a declaration against penal interests may be admitted as an exception to the hearsay rule, it must be proven trustworthy by 'independent corroborative evidence that bespeaks reliability,' under Smith v. State, 587 S.W.2d 659, 661 (Tenn. 1979). There, the Supreme Court of Tennessee stated:
 
 
 25
 This Court expressly rejects the rationale of the Maryland court that a statement against penal interest, standing alone, has sufficient 'inherent indicium of trustworthiness' to justify its admission, absent proof that it is collusive, frivolous, or otherwise obviously untrustworthy. See Harris v. State, 387 A.2d 1152, 1156 (Ct. Spec. App. Md. 1978).
 
 
 26
 We adopt the threshhold test articulated by the Supreme Court of Minnesota, to wit, that hearsay declarations against penal interest made by an unavailable declarant, to be admissible, must be proven trustworthy by independent corroborative evidence that bespeaks reliability.'
 
 
 27
 Id. at 661.
 
 
 28
 The state trial court found that Appellant had offered no evidence bespeaking reliability of the declaration against penal interest, and, therefore, it would not be admissible. This finding was affirmed by the Tennessee Court of Criminal Appeals. 639 S.W.2d at 680-81.
 
 
 29
 We believe that the determination of the state courts that appellant had offered no independent evidence of reliability is a finding of fact entitled to a statutory presumption of correctness. Under 28 U.S.C. Sec. 2254(d), federal courts in habeas proceedings must accord a presumption of correctness to state court findings of fact. See LaVallee v. Delle Rose, 410 U.S. 690 (1973), Sumner v. Mata, 449 U.S. 539 (1981), and Haggins v. Warden, Fort Pillow State Farm, 715 F.2d 1050, 1055 (6th Cir. 1983).
 
 
 30
 In addition, it is clear that the trial court's determination that the testimony of Shelton would have been merely cumulative was not erroneous.
 
 
 31
 We therefore find that appellant was not denied his Sixth Amendment right of compulsory process because of the failure to establish reliability of the testimony of shelton, and because Shelton's testimony would have been merely cumulative.
 
 III
 
 32
 Appellant's final argument is that there was insufficient evidence to convince a rational juror of his guilt beyond a reasonable doubt. He argues that the jury verdict was not supported by sufficient evidence, and therefore he was denied due process. He points to certain problems with identification by Mrs. Stinson, and notes that the state never tied him to the getaway car--Mr. Stinson's blue station wagon--and states that the personal items taken in the robbery and from the blue Monte Carlo were the only solid connection between him and the robbery. He says that witness Dew testified as to how he got them from Johnson, and thus, he argues, no rational juror could have been convinced beyond a reasonable doubt of his quilt. This claim presents no ground for reversal. There was more than enough evidence presented to support a conviction, and a clear fact question was created. The Tennessee Court of Criminal Appeals found the state's evidence 'ample, indeed overwhelming.' 689 S.W.2d at 679. We agree.
 
 
 33
 For the reasons given, the district court's denial of the writ of habeas corpus is affirmed.
 
 
 
 *
 The Hon. Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 See Brofford v. Marshall, 751 F.2d 845 (6th Cir. 1985), holding that a state trial court's statement of reasons denying a defendant's objection to standing trial in leg irons is entitled to a statutory presumption of correctness for state court factual findings under 28 U.S.C. Sec. 2254(d). It should be noted here that both the trial court and the state appellate court considered this specific issue and found insufficient prejudice to declare a mistrial