# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
July 24, 2012 Session

## STATE OF TENNESSEE v. CHRISTOPHER LEE GIBSON

**Appeal from the Criminal Court for Knox County**
**Nos. 81786, 96847      Jon Kerry Blackwood, Judge**

---

**No. E2011-01456-CCA-R3-CD - Filed October 26, 2012**

---

In 2007, pursuant to a plea agreement, the Knox County Criminal Court sentenced appellant, Christopher Lee Gibson, to an effective four-year sentence for aggravated assault and reckless endangerment. The trial court suspended the sentence and placed appellant on probation. The court subsequently issued a probation violation warrant alleging that appellant violated the terms of his probation by committing the new offense of possessing a handgun after having been convicted of a felony. Appellant pled guilty, without a recommended sentence, to committing the new offense and stipulated that he had violated the terms of his probation. Following a combined hearing to determine his sentence for the handgun charge and the outcome of his probation violation, the trial court revoked appellant's probation and ordered that he serve the four-year sentence in confinement. The trial court also ordered appellant to serve a sentence of two years for unlawful possession of a handgun concurrently with his original four-year sentence. Appellant contests the trial court's revoking his probation and ordering him to serve the original four-year sentence. Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

James A. H. Bell and Ed Holt, , Knoxville, Tennessee, for the appellant, Christopher Lee Gibson.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; and Al Schmutzer, Jr., District Attorney General Pro Tem; for the appellee, State of Tennessee.

**OPINION**

## I. Procedural History

On April 25, 2005, a Knox County grand jury indicted appellant for two counts of aggravated assault, one count of resisting arrest, and two counts of evading arrest. On April 11, 2007, pursuant to a negotiated plea agreement, appellant entered guilty pleas to one count each of aggravated assault and reckless endangerment, and the State dismissed the remaining three counts of the indictment. The trial court accepted the sentencing recommendation and sentenced appellant as a Range I offender to concurrent sentences of four years for aggravated assault and two years for reckless endangerment. The sentences were suspended, and appellant was placed on probation.

On February 11, 2011, the State submitted a probation revocation warrant, alleging that appellant, a felon, violated the terms of his probation by committing the new offense of possessing a handgun. Appellant pled guilty to the new handgun charge and agreed that he had violated the terms of his probation on April 6, 2011, with the agreement that the new sentence for unlawful possession of a handgun would run concurrently with the prior four-year sentence. The parties agreed that he was a Range II offender for the new conviction, a Class E felony, and that his sentence would be between two and four years. Following a hearing, the trial court revoked appellant's probation, ordered him to serve the original four-year sentence in the Tennessee Department of Correction. The trial court also sentenced him to two years at thirty-five percent release eligibility on the conviction for unlawful possession of a handgun to be served concurrently in prison. Appellant now challenges the order to serve the full four-year sentence in custody.[1]

## II. Facts

At the June 3, 2011 sentencing/probation revocation hearing, appellant testified on his own behalf and acknowledged he was placed on probation in Knox County on April 11, 2007, for aggravated assault and reckless endangerment. He recalled he was in an interview at the Tennessee Bureau of Investigation ("TBI") field office when agents located the firearm, a .38 caliber handgun, in his residence. Appellant said he was aware of the

---

[1] It is unclear whether appellant challenges the manner of service of his two-year sentence on the handgun charge. He includes the case number of the handgun offense, 96847, in his notice of appeal and alludes to sentencing errors. In addition, he made an appeal bond on that docket number. However, any argument appellant advances with regard to the sentence imposed on the handgun violation is waived because he failed to support the issue with argument, citations to relevant authorities, or references to the record. *See* Tenn. R. App. P. 27(a)(7)(A)-(B); Tenn. R. Crim. App. 10(b).

weapon's location in his home "but . . . had forgotten about it," and when agents told him they located a weapon, "it came back to [him]." Appellant stated that his ex-wife owned the gun, loaned it to his father in Indiana, and retrieved it from his father's house when his father was in the hospital.

Appellant explained that he began taking pain medications following an automobile accident in 1988 or 1989. He testified he took hydrocodone and Percocet for many years and oxycodone and OxyContin for the last few years, but he stopped all medications at the request of his probation officer around April 6, 2011.

Appellant testified he first met with TBI agents in February 2011 during the course of an investigation in which he was cooperating involving the illegal sale of narcotics. He admitted that he was selling drugs to former Judge Richard Baumgartner, the target of the TBI investigation ("target"), but alleged that he only did so because he was under duress. He maintained that he sold drugs to the target of the investigation and an acquaintance of the target, but he did not sell drugs to anyone else. He alleged that he complied with the target's request for him to obtain drugs to sell to the target because the target was in a position of authority over him and "insinuated threats" by his tone of voice.

Appellant met with agents again in late September or early October 2011 concerning a search warrant for his residence. He advised the agents that he had no problem with the search warrant and acknowledged that the gun was found during the search. Appellant admitted that following convictions for violent crimes in 1992 and 2007, he knew he was not permitted to have firearms in his home, yet he was aware of at least two firearms located within his home.

Appellant also called as a witness Dr. James Kevin Buchanan, a general practitioner in Knox County, Tennessee. Appellant sought to establish through Dr. Buchanan that the prescription drugs that he possessed and consumed were legally prescribed by a doctor and necessary for pain management.

On cross-examination, however, Dr. Buchanan testified that he prescribed appellant's medicine for monthly refills and the last prescriptions of ninety hydrocodone, ninety OxyContin, and sixty Xanax were filled on March 24, 2010. Dr. Buchanan referred appellant to Dr. McNeal's pain management clinic for further treatment. The State questioned Dr. Buchanan with regard to his knowledge of appellant's receiving additional prescriptions from Dr. McNeal on April 2, 2010. Dr. Buchanan would not have expected appellant to need a refill of those medications within nine days of his prescribing them.

Darlene Gibson, appellant's ex-wife, testified that she originally purchased the .38 caliber Smith & Wesson[2] handgun obtained by law enforcement from appellant's residence pursuant to a search warrant. She then loaned it to her father-in-law in Indiana. Upon her father-in-law's death, she traveled to Indiana and retrieved the gun. She brought the gun to the home she shared with appellant in Knoxville and placed it "up under [her] dresser drawer." She acknowledged that appellant was a convicted felon at the time she purchased the gun, that he knew she had possession of it, and that he knew where she stored it. Ms. Gibson testified that when she moved from the residence, she forgot about the gun being there because "it had been there for so long."

On cross-examination, Ms. Gibson testified that before she left the residence, she owned two guns that she kept on the premises and related that appellant "wasn't to be around them or anything." Ms. Gibson testified that during the time she was living with the appellant, they began seeing Dr. Buchanan to obtain prescriptions for narcotics to sell. She further stated that appellant was sending three other women to Florida pain centers to get prescriptions filled to bring back to Tennessee to sell.

Jim Williams, an assistant special agent with the TBI, testified he first met with appellant on the day agents executed a search warrant on appellant's residence. Special Agent Williams stated that during the interview with appellant, he and appellant learned of the discovery of the weapon. When Special Agent Williams questioned appellant about the weapon, appellant told him he had an older gun he received from his father and said he would have gotten it out of the house if he thought agents would obtain a search warrant. The interview with appellant was recorded in Special Agent Williams's report.

### III. Analysis

### A. Standard of Review: Probation Revocation

The revocation of a suspended sentence rests in the sound discretion of the trial judge. *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). In determining whether to revoke probation, it is not necessary that the trial judge find that a violation of the terms of the probation has occurred beyond a reasonable doubt. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). If the trial court finds by a preponderance of the evidence that the defendant has violated the conditions of probation, the court is granted the authority to revoke the probation and suspension of sentence. Tenn. Code Ann. § 40-35-311(e)(1) (2010). Upon finding that the

---

[2] Appellant's possession of the .38 caliber Smith & Wesson formed the basis for his being charged with unlawful possession of a handgun by a convicted felon.

defendant has violated the conditions of probation, the trial court may revoke the probation and implement one of the following: (1) order incarceration; (2) order the original probationary period to commence anew; or (3) extend the remaining probationary period for up to two additional years. *State v. Hunter*, 1 S.W.3d 643, 644 (Tenn. 1999); *see* Tenn. Code Ann. §§ 40-35-308, -310, -311 (2010). The appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010).

## B. Probation Revocation

Appellant argues that at the evidentiary hearing, the State advanced evidence of other offenses not charged in the probation violation warrant, and the trial court relied upon said evidence in revoking his probation.

On June 3, 2011, the trial court held a combined hearing to determine appellant's sentence for unlawful possession of a handgun and the appropriate disposition for the probation revocation. Appellant presented several witnesses at the hearing. At the close of the evidence, the trial court clarified:

> I think it's important that we know exactly why we're here . . . .
>
> [Appellant] has pled guilty to an E felony; is that correct? He has stipulated that he's a range II offender, and the range of punishment for those – that offense, if I'm not – correct, is not less than two, no more than four years in the department of corrections.
>
> At the same time, [appellant is] here having stipulated that there's probable cause to show that he's violated his terms of probation, and before the Court is the issue of what to do with not only the sentence that he is to receive for this felony conviction that he's entered, but also to determine proper sentence to be meted out as a result of his admission of his probation violation, and *I think it would also be proper to point out here that the basis for the petition to revoke his probation in this case is his admission of violating the terms of probation by carrying or have been in possession of a firearm as a convicted felon.*

We've heard quite a bit of proof here about other issues outside of the parameters of the petition to revoke, but I think all of these issues and all these – all this evidence here today is pertinent and relevant to the Court in making its decision about the proper sentence in this case.

(emphasis added). The trial court then continued to review and apply the proper sentencing guidelines in determining appellant's sentence for the felony conviction and pronounced the minimum sentence of two years at thirty-five percent release eligibility.

After pronouncing sentence, the court said:

Now that brings us to the revocation and what is the proper sentencing alternative to be applied in this case, and as I said before, the basis of this probation violation is the fact that he has entered into – or he has been convicted or entered into the plea with regard to the gun charge, and that was the basis for the violation. *That was the basis for the felony conviction and his violation of probation.* Now, we've heard other evidence in this case that specifically is not completely relevant or bears on the issue of his probation violation, did he or did he not possess this gun, which is given, but we've heard other evidence in this case, and that evidence concerning these months and months of activity, they are *relevant to show this defendant's amenability to an alternative sentence in this case* or some other crafting by the Court of some sentence to address his specific needs.

(emphasis added). From this statement by the trial court and the record in this case, it is clear that appellant had already pled guilty to unlawful possession of a handgun. The trial court considered the evidence appellant presented at the hearing in determining the proper disposition of the revocation hearing. The court clearly did not consider the evidence as a basis for revoking his probation, as appellant now appears to argue.

Having before it evidence that appellant had pled guilty to a new offense, the trial court acted within its discretion in ordering appellant to serve his full four-year sentence in confinement. *State v. Gary Lynn Poole*, No. E2010-01213-CCA-R3-CD, 2011 WL 208077, at *3 (Tenn. Crim. App. Jan. 13, 2011) ("[g]iven that the defendant admitted violating his probation by picking up a new conviction . . . , the trial court did not abuse its discretion by revoking the defendant's probation and ordering that he serve the balance of his sentence in . . . in confinement"). Appellant is not entitled to relief on this issue.

-6-

## C. Motion to Quash Subpoena

Appellant argues that the trial court erred in granting the State's motion to quash a subpoena he issued for an allegedly material witness, Richard Baumgartner.

"The Sixth Amendment and Due Process Clause of the Fourteenth Amendment to the United States Constitution 'clearly guarantee a criminal defendant the right to present a defense which includes the right to present witnesses favorable to the defense.'" *State v. Vaughn*, 279 S.W.2d 584, 602 (Tenn. 2008) (quoting *State v. Brown*, 29 S.W.3d 427, 432 (Tenn. 2000)). The United States Supreme Court discussed the implications of this right as follows:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas*, 388 U.S. 14, 19 (1976). "Although an accused in a criminal trial has a constitutional right to the compulsory attendance of witnesses under the Sixth Amendment of the United States Constitution, and Article I, Section 9, of the Constitution of Tennessee, the right to compulsory process is not unlimited." *State v. Smith*, 639 S.W.2d 677, 680 (Tenn. Crim. App. 1982). The court continued:

> "A court is not required to issue compulsory process for anyone whom accused may designate as a witness; the constitutional right to compulsory process requires such process for, and only for, competent, material, and resident witnesses whose expected testimony will be admissible. Within these limitations[,] accused may obtain the attendance of any witnesses he cares to use."

*Id.* (quoting *Bacon v. State*, 385 S.W.2d 107, 109 (1964)). "The rule . . . is the unlimited right of subpoena[,] limited only by authority to quash upon a showing (by the objector) that the witness has no information material to the issues or that the evidence sought is equally immaterial." *State v. Womack*, 591 S.W.2d 437, 445 (Tenn. Ct. App. 1979). Similarly, a trial court may quash or modify a subpoena "if compliance would be unreasonable or oppressive." Tenn. R. Crim. P. 17(d)(2). Appellate courts review a trial court's decision

regarding a motion to quash for abuse of discretion. *State v. Hester*, 324 S.W.3d 1, 53 (Tenn. 2010) (citing *State v. Burrus*, 693 S.W.2d 926, 929 (Tenn. Crim. App. 1985)).

Appellant issued a subpoena for Richard Baumgartner, the target of the TBI's investigation, to testify at his sentencing/revocation hearing. As grounds, he asserted that the target had been in his home several times and had never seen a firearm. The target moved to quash the subpoena and argued that the probation violation warrant relied solely upon appellant's possession of a firearm, not any of the drug transactions, and thus, further testimony would be immaterial in light of appellant's stipulation to the offense. On that basis, the trial court granted the motion to quash.

Appellant claims that despite the tightly-drawn parameters of the evidentiary hearing, the State strayed outside the accepted boundaries and introduced evidence of his drug transactions with the TBI's target, thereby creating the need for the target's testimony and depriving appellant of due process. He further claims that the trial court relied upon the State's evidence of his extensive history of illegal sales of controlled substances in determining the disposition of his probation violation.

We first note, as above, that appellant pled guilty to the new offense of unlawful possession of a handgun by a felon and stipulated to this charge as the basis for the trial court's revoking his probation. Thus, the only remaining issues were the sentence he would receive on the firearm violation and the disposition of his probation violation. As such, the trial court correctly ruled that the TBI target's proffered testimony that he had never seen appellant in possession of a firearm would be immaterial. TBI agents located the firearm during execution of a search warrant. Appellant admitted he knew the handgun was located within his residence, though he attributed ownership of the weapon to his ex-wife, and pled guilty to the offense as charged.

Next, with regard to the State's introduction of allegedly improper evidence, the evidence appellant now complains of was introduced through the State's cross-examination of appellant's witnesses. Appellant cannot present witnesses on his behalf, then complain that they gave damaging testimony during cross-examination. *See, e.g., State v. Banks*, 271 S.W.3d 90, 170 (Tenn. 2008); Tenn. R. App. P. 36(a). It is also noteworthy that appellant did not lodge a single objection to any of the witnesses' testimony he now claims was improper.

Finally, appellant argues that in light of the State's erroneously introducing evidence concerning his drug transactions with the target, he should have been permitted to subpoena the target in support of appellant's contention that he acted under duress in completing the transactions. We emphasize that the trial court held a joint hearing to determine appellant's

sentence on the handgun charge and the outcome of his probation revocation. The court heard evidence pertaining to both issues simultaneously. Appellant testified that the target "insinuated threats" against him by using a harsh tone of voice in requesting that appellant obtain narcotics on his behalf. Appellant introduced a copy of the target's guilty plea hearing transcript in which the target admits to engaging in illegal drug transactions with appellant while the target was in a position of authority over him. From this evidence, appellant was free to argue that he was under duress and acted under the dominion of the target when he complied with the target's request to furnish illegal drugs. He did, in fact, argue this position in the trial court, and the court considered the evidence as part of its weighing of enhancing and mitigating factors. Although the instant case involves the trial court's resolution of appellant's probation violation warrant, not the sentence imposed as a result of his conviction for unlawful possession of a handgun by a felon, the trial court had before it the same evidence in determining whether to return appellant to probation or order him to serve his sentence in confinement. Even without the testimony of the TBI's target, the trial court ultimately determined that the mitigating factors outweighed the enhancement factors in passing sentence on the firearms charge and sentenced appellant to the minimum allowed as a Range II offender, from which this court concludes that the target's testimony was immaterial and that the trial court did not abuse its discretion in quashing the subpoena for him to appear. Any error in the trial court's allowing evidence of appellant's drug transactions was harmless in light of his guilty plea to the offense of possessing a handgun as a convicted felon. *Gary Lynn Poole*, 2011 WL 208077, at *3.

Based on the record as a whole, appellant has failed to establish that the trial court abused its discretion in granting the State's motion to quash. He is not entitled to relief on this issue.

## CONCLUSION

Based on our review of the record, the parties' briefs, and the arguments of counsel, we discern no error and affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE