IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 7, 2020 Session

## CHRISTOPHER BAILEY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 12-05561          Paula L. Skahan, Judge**

————————————————————

### No. W2019-00678-CCA-R3-PC

————————————————————

Petitioner, Christopher Bailey, appeals the denial of his petition for post-conviction relief. Following a jury trial, Petitioner was convicted of one count of rape of child and sentenced to twenty-five years at one-hundred percent. Petitioner contends on appeal that the post-conviction court erred in denying the petition for post-conviction relief because he was denied effective assistance of counsel. He contends that trial counsel was ineffective for (1) failing to file a pre-trial motion in limine; (2) failing to object when the State asked the victim to testify about other times in which Petitioner forced the victim to perform oral sex; (3) asking the victim's stepsister about her opinion of Petitioner's character for truthfulness; (4) asking the victim why she slept downstairs; (5) failing to object when the State asked the victim about counseling and her medication; and (6) failing to argue during the Rule 412 hearing that Petitioner should be permitted to introduce evidence concerning the victim's prior sexual behavior. Petitioner further argues: that the cumulative effect of trial counsel's errors warrants post-conviction relief; that the post-conviction court erred in denying Petitioner's request for funding for an investigator; and that the post-conviction court erred in denying Petitioner's request to call the prosecutor as a witness at the post-conviction hearing. Following a review of the briefs and the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Christopher Bailey.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

*Background*

The facts of this court as set forth by this court on direct appeal are as follows:

This case arose after the defendant sexually assaulted the victim when she spent the night at his home. At trial, the victim testified that she was born in 2000 and that she was fourteen years old at the time of the trial. For the first years of her life, the victim lived with her biological mother, her four sisters, five brothers, and four cousins. The victim initially testified that she did not live with her cousins, but she changed her testimony after being shown a transcript from a pretrial hearing where she said she lived with her four cousins. She testified that some of the children were teenagers when she lived with them.

Beginning in 2008, the victim lived with her biological father and her stepmother. Her stepmother had a daughter, the victim's stepsister, who was in a romantic relationship with the defendant. In December 2009, when the victim was nine years old, her stepsister and the defendant moved into a townhome together. The victim's stepsister had two children, who were the victim's niece and nephew, and the victim shared a close relationship with the children. The victim typically spent the night at her stepsister's home every other weekend. The townhome had two bedrooms upstairs, and the victim's stepsister and the defendant shared one bedroom and the victim's niece and nephew shared bunk beds in the second bedroom. The victim occasionally slept in the bunk bed with her niece, but she typically slept on the couch because the defendant instructed her to sleep there.

One evening shortly after the victim's stepsister and the defendant moved into the townhome, the victim was spending the night at the residence. She testified that while everyone else in the home was asleep, the defendant came downstairs while she was sleeping on the couch. The defendant went to get a glass of water and then walked over to the couch. He unzipped his pants and placed the victim's hands on his "stuff," which the victim explained meant his penis. While holding the victim's hands, he rubbed her hands "up and down" on his penis. He threatened the victim and told her not to tell anyone about the incident, which frightened her. The victim did not tell anyone about the incident at the time, and she continued to spend the night with the defendant and her stepsister on the weekends.

Sometime after the first sexual incident, the victim was again sleeping on the couch when the defendant came downstairs and woke her. The defendant unzipped his pants, made the victim open her mouth, and placed his penis in her mouth. He "moved" his penis "[u]p and down," and the victim said that the incident ended when a "white" substance "came out of [the defendant's] stuff." The victim described the substance as "[w]arm" and "[s]ticky." The defendant then exited the house and returned after purchasing some candy for the victim. The victim believed that she was eleven years old at the time of the incident. She recalled that the defendant put his penis into her mouth "[q]uite a few times."

In the spring of 2012, when the victim was eleven years old, the victim's niece had her birthday party at the victim's home. The victim was getting ready for the party at the townhome her stepsister shared with the defendant. While the victim was upstairs, the defendant "grabbed" her buttocks. This incident occurred a "[l]ong time" after any of the incidents when the defendant put his penis in the victim's mouth. The victim told her nephew to tell her stepsister that the defendant had touched her buttocks. The victim did not want to tell her stepsister herself because she was afraid. The victim's nephew informed the victim's stepsister about the touching, and the victim's stepsister asked the victim in front of the defendant if he had touched her buttocks. The victim denied that the defendant touched her because he was in the room when her stepsister asked her about the incident. The victim's stepsister then asked the defendant if he touched the victim, and he replied that he did not. The victim testified that later that day she told her stepsister about how the defendant forced her to touch his penis and put his penis in her mouth, but her stepsister testified that she did not recall the victim saying these things.

At the birthday party, the defendant approached the victim while she was standing alone on the back porch and initiated a conversation. He said that he was "sorry," but he did not specify why he was apologizing. The victim's father saw the defendant talking to the victim, and he instructed the victim to go play in the yard with the other children. The victim's father noticed that the victim was the only child not playing and that while the other children seemed excited about the party activities, the victim was not "quite into it."

Two days after the party, the victim's stepmother was combing the victim's hair. The victim said that she had a secret to tell her stepmother

but that she was afraid to disclose it. The victim's stepmother convinced the victim to tell her what was wrong, and the victim told her that the defendant "was doing bad things to her" and described the acts of abuse. She said she finally told her stepmother because she did not want the defendant to abuse her or her niece. She told her stepmother that the defendant had threatened to hurt her if she told anyone about the abuse.

The victim's stepmother told the victim's father about the victim's disclosure, and the victim's stepmother asked that the family go to the defendant's apartment. The victim's stepmother testified that she called police while on her way to the apartment and called again once she arrived. When the family arrived at the defendant's apartment, the victim's stepmother summoned the defendant downstairs into the living room. She asked the defendant if the victim's allegations were true, and he responded, "[N]o." She said that her son, the victim's stepbrother, arrived about two to three minutes after her, the victim's father, and the victim. She stated that she, the victim's father, and the victim's stepbrother "constantly asked" the defendant about the allegations. She testified that the defendant repeatedly denied sexually abusing the victim. The victim's stepmother saw the defendant move toward the door, and the victim's stepbrother grabbed a baseball bat that was next to the front door. The victim's father and stepbrother wrestled the defendant to the ground and continued to ask the defendant if he did "anything." The victim's stepmother testified that the defendant then responded, "[Y]eah, I did it" but that the defendant then "changed it and said that he didn't do it." The victim's stepmother testified that the victim's stepbrother did not hit the defendant with a baseball bat or with a vacuum cleaner. She stated that the victim's father and stepbrother restrained the defendant until police arrived.

The victim's father testified that he called the victim's stepbrother on the way to the defendant's home. The victim's father said that he knocked on the defendant's door, went inside, and questioned the defendant about the victim's allegations. The victim's father testified that the victim's stepbrother arrived at the residence shortly after he did and that the family continued to question the defendant. The victim's father testified that the defendant repeatedly said "that nothing has happened." The victim's father saw the defendant walk next to a wall in the residence where the defendant kept a baseball bat and a weight. The defendant broke for the door, and the victim's stepbrother grabbed the baseball bat while the victim's father tackled the defendant. Once on the ground, the defendant said, "I'm sorry, man. I'm sorry." The victim's father testified that the victim's stepbrother asked the defendant why he was sorry. The

victim's father testified that the defendant "never did say what he was sorry for, but he [said] he was sorry." The victim's father testified that he and the victim's stepbrother held the defendant on the ground and released him once police arrived. He said that the victim's stepbrother did not hit the defendant with the baseball bat.

The victim's stepbrother testified that the victim's stepmother called him, and after receiving the phone call, he met the family at the defendant's apartment. When he entered the residence, the defendant was coming down the stairs. The victim's stepbrother testified that the victim's father was questioning the defendant and that the defendant "had admitted to what he had d[one] and he was apologizing." The victim's stepbrother stated that the family continued to question the defendant, and the defendant "had admitted it the second time." After the second admission, the defendant "tried to charge" the victim's stepbrother, and the two began "scuffling." The victim's stepbrother believed that the defendant was going to reach for the baseball bat, so he grabbed the bat to prevent the defendant from using it as a weapon. The victim's stepbrother pointed the baseball bat at the defendant, and the victim's father restrained the defendant on the floor until police arrived. The victim's stepbrother testified that he did not hit the defendant with the baseball bat. He also testified that the defendant never denied sexually abusing the victim.

The victim's stepsister testified that she answered the door and let the victim's stepmother, the victim's father, the victim's stepbrother, and the victim into her home on the evening of the confrontation. She stated that the family asked her to summon the defendant downstairs, and she testified that she called him to come downstairs. As the defendant was descending the stairs, the victim's stepsister heard her family asking him whether he sexually abused the victim. The victim's stepsister testified that the defendant looked at her and said he was sorry, although he did not say why he was apologizing.

Officer Verdo Jackson of the Memphis Police Department ("MPD") and his partner, Officer Steve Moore, responded to a 9-1-1 call from the victim's stepsister's apartment. When they arrived at the apartment, a female opened the door and told officers that there was "a rapist" in the apartment. Officer Jackson saw the victim's stepbrother holding a bat, and Officer Jackson drew his weapon and ordered him to drop the bat. The victim's stepbrother complied and said, "[I]t's not me, it's him," pointing to the defendant, who was lying on the living room floor. Officer Jackson recalled that "two or three people" were gathered around

the defendant. Officer Jackson testified that the defendant's shirt may have been torn, but he did not see any blood or marks on the defendant's face. Officers escorted the defendant out of the apartment, and Officer Moore took statements from the victim's father and stepmother.

Lieutenant Carl Ray also responded to the scene. He stated that the victim "made a disclosure that she was sexually abused." After the disclosure, Lieutenant Ray arranged for the victim to participate in a forensic interview the next day. Lieutenant Ray observed the forensic interview, and he heard the victim make several more disclosures of sexual abuse.

On cross-examination, the victim agreed that in her forensic interview she said that the defendant put his penis in her mouth "every night." She agreed that she testified that this happened "three times" during direct examination, and she said that she picked the number three because she could not recall how many times the defendant actually put his penis in her mouth. She agreed that she did not tell the forensic interviewer about the incidents when the defendant placed her hands on his penis or when he grabbed her buttocks. The victim agreed that she told the forensic interviewer that her stepbrother struck the defendant with a baseball bat and a vacuum cleaner, but she testified that he did not actually strike the defendant with either object. She explained that she made this statement because she saw her stepbrother pick up a bat and a vacuum cleaner and she thought that he hit the defendant with these objects.

Danielle Williams testified for the defense. She stated that the defendant was her older brother and that he helped her mother raise her and her siblings. Ms. Williams testified that she visited the defendant at the home he shared with the victim's stepsister. She testified that in her opinion, the defendant was a truthful, kind, and unselfish person who was morally responsible.

*State v. Christopher Bailey*, No. W2014-02434-CCA-R3-CD, 2016 WL 7742753, at *1-3 (Tenn. Crim. App. Apr. 8, 2016).

*Post-Conviction Hearing*

Trial counsel agreed that she did not file a motion in limine in Petitioner's case. She testified:

I understood that the State would be permitted to elect an offense after putting on its proof in this case, and this was a case where based on the discovery it was evident that [the victim] had accused or was alleging that [Petitioner] had orally penetrated her multiple times.

In the Forensic Interview she said he did it all the time, and so I was aware that there were multiple times that might be testified to. I filed a motion for a Bill of Particulars asking for specifics and representations that were made to me were all the State knew was what was in the discovery I had received.

So there were no more specifics that we knew going into the trial. So it was my understanding that the State could put on evidence of multiple instances of oral penetration and I did not think to file a motion in limine when that was the context.

Trial counsel said that she "might have" filed a motion in limine if she had been aware of two cases cited in Petitioner's amended petition for post-conviction relief: *State v. Jeff Carter*, No. M2009-02399-CCA-R3-CD, 2010 WL 534212, at *1 (Tenn. Crim. App. Dec. 16, 2010) and *State v. Danny Ray Smith*, E2012-02587-CCA-R3-CD, 2014 WL 3940134, at *1 (Tenn. Crim. App. Aug. 13, 2014).

Trial counsel testified that she did not object when the State asked the victim about another instance of oral penetration by Petitioner. She said: "Well, this - - this would have been an active oral penetration and, again, I thought the State was going to be permitted to elect an offense, an oral penetration incident. And so I didn't object when the question was about an active oral penetration." Trial counsel acknowledged that at that point, the victim had already spoken in detail about one active oral penetration, and there was a one-count indictment. However, trial counsel noted that the testimony about the first incident was not specific with respect to a time within the indictment. Trial counsel felt that all of the instances of oral penetration could be admitted, and then the State would be required to elect at the end of trial. However, trial counsel felt that she should have objected when the prosecutor asked the victim if there were more acts where Petitioner placed his penis in her mouth, and the victim said, "yes, ma'am." The prosecutor also asked the victim if she could recall how many times, and the victim said, "Quite a few times."

Trial counsel testified that Petitioner told her the victim and the victim's stepsister's son, T.B. (we refer to the minor by his initials), had sexual interactions between February and March 2012. Petitioner told her that during one of the incidents, the victim showed T.B. "her stuff." During the second incident, Petitioner said that he was told the victim was hunching on T.B. He did not witness any of the interactions but was told about them by the victim's stepsister. Trial counsel testified that Petitioner told

- 7 -

her that he tried to keep the victim and T.B. apart after that. He thought that was the reason the victim fabricated the allegations against him. Trial counsel included the sexual allegations in a motion pursuant to Rule 412 of the Tennessee Rules of Evidence concerning the victim's knowledge of sexual matters. Trial counsel testified that she also included in the motion an allegation that there was some sexual contact between the victim and the victim's cousins in Chicago. Trial counsel did not recall why she did not additionally argue in the motion that the victim's sexual behavior with T.B. and Petitioner's keeping them apart from each other were motives to get Petitioner out of the house. Trial counsel testified that she did not ask the victim at the Rule 412 hearing about the sexual interactions between her and T.B. because she "didn't think [she] had a basis to ask that question of [the victim]." Trial counsel unsuccessfully tried to subpoena the victim's stepsister for the hearing. She was unsure if she attempted to subpoena T.B. Trial counsel testified that she did not consider calling Petitioner to testify about the incidents because she thought it was hearsay and not admissible. Trial counsel explained that she initially included the allegations between the victim and T.B. in the 412 motion because she thought that she would have some evidence of sexual interactions between the two before the 412 motion was heard. However, she was unable to find any evidence to substantiate the allegations so she did not ask questions about them at the 412 hearing.

Trial counsel testified that she asked the victim's stepsister at trial about Petitioner's character for truthfulness. Concerning her reason for asking the question, trial counsel said: "From the beginning of the representation [Petitioner] had been assuring me strongly that [the victim's stepsister] would have only good things to say about him, and he very much wanted me to locate her and have her as a witness for the Defense, and to present whatever we could of her opinion of him." Trial counsel testified that she did not interview the victim's stepsister before trial because she avoided trial counsel. She said: "Our investigator had one contact with [the victim's stepsister] but that was before I was [Petitioner's] attorney."

Trial counsel testified that during the victim's cross-examination at trial, she asked the victim why she slept downstairs at her stepsister's house. Concerning her reasons for asking the question, trial counsel said:

> There were two reasons. One, again, was [Petitioner's] assurances that [the victim] always had a choice as to where she slept. She could either sleep in the room that [the stepsister's two children] shared or she could sleep downstairs.
>
> [Petitioner] was insistent that that was always the case and that [the victim's stepsister] would say that if I had a chance to talk to her. And then [the victim's stepsister] did say that. [The victim's stepsister] testified at a pre-trial hearing and I was able to ask her that question and she said that [the victim] had a choice about where to sleep.

And so I was relying on that background when I asked [the victim] that question.

Trial counsel agreed that she did not interview the victim prior to trial to ask her why she slept downstairs. Trial counsel said that the victim and her family would not speak with trial counsel.

Trial counsel acknowledged that she did not object to the State's questioning the victim on counseling at Lakeside and about being on medication. Concerning this issue, trial counsel explained:

> When I heard that question I should have objected, and I missed my opportunity to object when I heard the question, so then I had to decide whether to object subsequently. What came out subsequently was the [the victim] had been seeing a counselor at Lakeside only for the last months or so.
>
> She was actually fourteen years old at the time of trial. She was born in August of 2000, and this was October of 2014, and she testified that she had been seeing a counselor since after she turned fourteen which would have been about a period of two months, two years after she alleged that [Petitioner] had sexually assaulted her.
>
> So there had been no counseling during that period and I realized that the jury could regard [the victim] as someone who's in counseling for reasons having nothing to do with that she was sexually molested, she might be a troubled child and that could make her testimony come across as less reliable to the jury.
>
> So I made a decision after missing the first opportunity to object, not to object at that point.

On cross-examination, trial counsel testified that the defense strategy in Petitioner's case was that the victim was not telling the truth about Petitioner having sexually assaulted her. She said:

> Either no sexual assault had ever happened or [the victim] had been sexually assaulted by a different person. And we had a theory developed that the likely alternate suspect was Rodney Foster who was the brother of [the victim's stepsister]. Rodney it turned out had been sleeping in the same downstairs room as [the victim], which is where she said she was when [Petitioner] assaulted her.

Trial counsel testified that Petitioner had no first-hand knowledge of Mr. Foster assaulting the victim. She said that she attempted to locate the victim's stepsister and Mr. Foster, but they avoided contact with her. She noted that the victim's stepsister initially spoke with an investigator but then avoided all attempts at later contact. Trial counsel further testified: "It was part of our strategy to present character evidence, which I did do, not through [the victim's stepsister] and quite the way I intended to because [the victim's stepsister] wouldn't talk to us in advance."

Trial counsel testified that she was concerned about introducing character evidence for Petitioner at trial because she did not want to open the door for additional bad conduct by Petitioner. She was particularly concerned about an incident that Petitioner wanted her to present concerning an altercation between Petitioner and the victim's father in which "[Petitioner] didn't come out looking like a morally upstanding character based on his conduct in that incident."

Trial counsel agreed that she did not file a pretrial motion in limine to limit the State's proof to one count of rape because the testimony concerning multiple instances of oral penetration was not introduced at the State's 404(b) hearing. She further agreed that the testimony first came out at trial to the surprise of both trial counsel and the State. Therefore, trial counsel did not have a reason to challenge the testimony pretrial based on what was presented at the 404(b) hearing.

Trial counsel acknowledged that she did not object to the testimony about the multiple incidents of oral penetration at trial. Instead, she used the testimony to cross-examine the victim about inconsistencies in her story. Trial counsel was able at trial to get the victim to acknowledge that she could not recall certain details and that the victim had fabricated certain details. She also used the inconsistencies in the victim's version of events during closing argument.

Trial counsel testified that her strategy to raise an issue about the victim's alleged sexual contact with other individuals was based on information that trial counsel received from Petitioner and his assurances that the victim's stepsister would have only good things to say about him. Trial counsel asserted: "And it was through [Petitioner] that this theory about Rodney Foster arose. [Petitioner] told me about Rodney Foster's presence in the home. Not, however, until a significant period of time had passed, at least a year into the representation I would say." Trial counsel noted that the jury evidently did not accept that theory.

Petitioner testified that sometime in 2013 he told trial counsel about two sexual interactions between the victim and T.B. that occurred in "late March early April, of 2012." He said that the victim's stepsister told him that T.B. indicated that the victim "had been humping him or on top of him doing something[.]" Petitioner testified that

during a second incident, T.B. said that the victim was "showing [him] her stuff and he was kind of like hyperventilating [the victim] was showing [him] her stuff and he was crying." Petitioner testified that he was present when T.B. made the statement. Petitioner said that he and the victim's stepsister took turns after that keeping the victim and T.B. separated from each other. Petitioner testified that trial counsel then asked if he was the "enforcer," and Petitioner said: "yeah, basically." He said that he asked trial counsel about testifying at the 412 hearing, but trial counsel told him that the hearing was only for the victim. Petitioner asserted that if he had been called to testify at the 412 hearing, he would have testified about the two incidents of sexual contact between the victim and T.B.

Petitioner agreed that he told trial counsel that the victim's stepsister would have testified that he was a good person. On cross-examination, Petitioner testified that he remembered a conversation with trial counsel about calling the victim's stepsister as a character witness. However, he did not recall trial counsel advising him that the victim's stepsister would not be the kind of witness that Petitioner hoped she would be.

*Analysis*

Petitioner appeals the judgment of the post-conviction court denying him relief for his claims of ineffective assistance of counsel. Petitioner argues that the post-conviction court erred by (1) failing to file a pre-trial motion in limine; (2) failing to object when the State asked the victim to testify about other times in which Petitioner forced the victim to perform oral sex; (3) asking the victim's stepsister about her opinion of Petitioner's character for truthfulness; (4) asking the victim why she slept downstairs; (5) failing to object when the State asked the victim about counseling and her medication; and (6) failing to argue during the Rule 412 hearing that Petitioner should be permitted to introduce evidence concerning the victim's prior sexual behavior. Petitioner further argues (7) that the cumulative effect of trial counsel's errors warrant post-conviction relief; (8) that the post-conviction court erred in denying Petitioner's request for funding for an investigator; and (9) whether the post-conviction court erred in denying Petitioner's request to call the prosecutor as a witness at the post-conviction hearing.

To obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103; *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The

appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

*Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); *see Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011); *Frazier v. State*, 354 S.W.3d 674, 679 (Tenn. 2010).

A post-conviction petitioner bears the burden of proving his or her allegations of fact by clear and convincing evidence. T.C.A § 40-30-110(f); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier*, 303 S.W.3d at 679.

A petitioner has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. When a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. at 687; see *Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. *Id.* at 697.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1966) (*citing Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Furthermore, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

*Failure to File a Pre-trial Motion in Limine*

Petitioner argues that trial counsel rendered deficient performance by failing to file a motion in limine requesting the trial court to limit the State's proof to one specific instance of oral rape.

Concerning this issue, the post-conviction court found:

> Prior to trial, Trial Counsel did not file a motion in limine to ask the court to limit the State's evidence to only one instance of rape. Trial counsel did, however, file a 404(b) motion pre-trial to exclude instances where Petitioner asked the victim to touch his penis and touched the victim's buttocks. The decision whether to file pre-trial motions is a strategic decision, made by trial counsel, and will not be second-guessed by a reviewing court as long as the decision was an informed one based on adequate preparation. *Hellard v. State*, 620 S.W.2d 4, 9 (Tenn. 1982).

> Trial counsel testified that she filed a motion for a Bill of Particulars asking for specifics and representations that were made by the State. The State informed Trial Counsel that the State's evidence consisted only of what was provided to Trial Counsel in discovery. Trial Counsel testified that she was aware that the victim may testify to multiple acts of oral penetration, and understood that the State would be permitted to elect a specific offense within the timeframe of the indictment after putting on its proof-in-chief.

> Trial Counsel, after being questioned by Petitioner's counsel whether she was aware of two recent Court of Criminal Appeals of Tennessee Opinions, testified that she "might have" filed a motion to limit the evidence.

> Trial counsel was fully aware of the testimony that may be presented at trial, and obtained this information during her preparation for trial. Even though Trial Counsel, with the benefit of hindsight, "may have" decided a different strategy, this Court finds that Trial Counsel's decision not to file a pre-trial motion to exclude evidence of multiple acts of oral penetration within the time period in the indictment did not fall below an objective standard of reasonableness in this case. Trial Counsel's decision was made in light of all information that was available at the time.

- 13 -

The record supports the post-conviction court's findings on this issue. Petitioner was indicted on one count of rape of a child that occurred between December 22, 2009, and April 30, 2012. At trial, the victim testified as to one incident of oral rape that occurred while she was sleeping on the couch downstairs at her stepsister's apartment. The victim began to cry after testifying about the first oral rape, and there was a brief recess. The victim then testified that Defendant placed his penis in her mouth "quite a few times." When asked about the second time that Petitioner orally raped her, the victim indicated that she did not want to talk about it. The victim ultimately testified that Petitioner orally raped her three times but she only provided details of one oral rape. The trial court instructed the jury as follows:

> In this case, the State has elected to submit for your consideration the alleged act of penile/oral penetration (fellatio) as described by the victim as the first time the Defendant placed his penis in her mouth when she was sleeping on the couch on the first floor over at her sister's apartment on Watkins in the Saints Court Apartments, Memphis, TN occurring between December 22, 2009 and April 30, 2012,

> Members of the jury you are to consider only this alleged act in deciding whether or not the defendant has been proven guilty beyond a reasonable doubt of the offenses charged and included in the indictment.

Trial counsel testified that she did not file a motion in limine in Petitioner's case because she understood that the State would be permitted to elect an offense after putting on its proof in the case. Trial counsel was fully aware that the victim alleged Petitioner orally penetrated her multiple times. In the victim's forensic interview the victim said that Petitioner did it "all the time." Trial counsel testified at the post-conviction hearing that she "filed a motion for a Bill of Particulars asking for specifics and representations that were made to me were all the State knew was what was in the discovery I had received." Trial counsel also testified that "there were no more specifics that we knew going into the trial. So it was my understanding that the State could put on evidence of multiple instances of oral penetration and I did not think to file a motion in limine when that was the context." Although trial counsel was aware that the victim had alleged that oral rape occurred many times, she noted that specific instances of oral penetration were not introduced at the 404(b) hearing and that the testimony first came out during trial to the surprise of both trial counsel and the State.

Trial counsel's decision not to file a motion in limine in Petitioner's case was a reasonable strategic decision based on the information that trial counsel had prior to trial. *Hellard*, 629 S.W.2d at 9. The Tennessee Supreme Court held in *State v. Rickman*, 876 S.W.2d 824, 829 (Tenn. 1994), that evidence of other sex crimes is admissible when an indictment is not time specific and when the evidence relates to sex crimes that allegedly occurred during the time as charged in the indictment. *Rickman*, 876 S.W.2d at 829. In

- 14 -

such cases, the state must, at the close of its proof, elect the single offense for which a conviction is sought. *Id.* In reaching this decision, our supreme court reiterated that there is no general "sex crime" exception to the general rule against admitting evidence of other crimes. *See State v. Burchfield,* 664 S.W.2d 284, 287 (Tenn. 1984). However, the court recognized that, as a limited exception, the State should be allowed some latitude in the prosecution of criminal acts committed against young children who are frequently unable to identify a specific date on which a particular offense was committed. *Rickman*, 876 S.W.2d at 828.

At the post-conviction hearing, trial counsel admitted that she may have decided to file a motion in limine if she had known about two unpublished cases: *State v. Jeff Carter*, No. M2009-02399-CCA-R3-CD, 2010 WL 5343212, at *1 (Tenn. Crim. App. Dec. 16, 2010) and *State v. Danny Ray Smith*, E2012-02587-CCA-R3-CD, 2014 WL 3940134, at *1 (Tenn. Crim. App. Aug. 13, 2014) in which this court held that the *Rickman* exception did not apply. However in *Carter*, "there was only one indicted offense, the State provided a very detailed bill of particulars describing the [elected offense], and the State acknowledged at least three times that it intended to elect the [elected offense]." *Jeff Carter*, 2010 WL 5343212, at *11. Similarly, in *Smith*, this court pointed out that when "a defendant is on trial for one offense, the State can pinpoint a specific event that occurred during the time frame alleged in the indictment, and the victim can testify to that event, the *Rickman* exception does not apply. *Danny Ray Smith*, 2014 WL 3940134, at *13. In this case, the victim alleged that Petitioner had orally penetrated her multiple times. There was nothing in the record to indicate that the State in this case gave any indication to trial counsel that it knew before trial which act it was going to elect. Again, trial counsel testified at the post-conviction hearing that multiple instances of oral penetration were not introduced at the 404(b) hearing. Therefore, trial counsel was not ineffective for failing to file a motion in limine.

We also conclude that Petitioner has not shown that he was prejudiced by trial counsel's failure to file a motion in limine because he has not shown that any such motion would have been granted by the trial court or that the jury's verdict would have changed had a motion in limine been granted. Furthermore, we note that on cross-examination of the victim at trial, trial counsel was able to cast doubt on the victim's credibility by questioning her about the number of times that she had previously said that Petitioner orally penetrated her. The victim admitted on cross-examination that although she had testified that Petitioner orally penetrated her three times, she could not remember how many times it happened, and she made up the number three. The victim also admitted that she had told the forensic interviewer that it happened more than three times and that Petitioner did this to her every few minutes, all night, every night. Petitioner is not entitled to relief on this issue.

*Failure to Object When the State Asked the Victim to Testify About Other Times in Which Petitioner Forced the Victim to Perform Oral Sex*

In a related issue, Petitioner argues that trial counsel was "ineffective for failing to object when the State asked the victim to testify about other times in which [Petitioner] forced her to perform oral sex on him." Concerning this issue, the post-conviction court found:

> During trial, the State put on detailed proof of the first time Petitioner orally raped the victim. The victim also testified that Petitioner had orally raped her "quite a few times" on other occasions following the initial rape. The decision to raise objections during trial is a strategic decision, which will only be second-guessed if the decision was made without adequate preparation or information. *Hellard v. State*, 620 S.W. 2d. 4, 9 (Tenn. 1982). In analyzing whether the decision falls to the level of deficient performance as to allow for post-conviction relief, Petitioner must also establish a reasonable probability that but for counsel's errors, the results of the proceedings would have been different. *Goad*, 938 S.W.2d 363, 369-370.
>
> Trial counsel did object, and a bench conference was held, when the victim appeared to be on the verge of testifying to an incident that was not admitted during the 404(b) hearing. The court allowed this line of questioning, and the State instead asked how many times there had been oral penetration.
>
> Trial counsel testified that she believes that she should have objected when the State asked the victim about how many times oral penetration had occurred. Trial counsel testified that she believed the State was going to ask the victim about an incident of "active oral penetration," and that the State was going to be permitted to elect an offense pertaining to a specific act of oral penetration. Trial counsel testified that the victim's account of the first oral penetration was not very specific and therefore she believed that the State may wish to elect an offense pertaining to another act of oral penetration. Even so, Trial Counsel concedes that she should have objected at this point.
>
> Trial Counsel's decision not to object was a strategic one and was made with adequate information as a result of trial preparation. The record shows that trial counsel was aware of the limitations that the court placed on the State's line of questioning, and that the State's question about how many times Petitioner orally raped the victim "surprised" her. Trial Counsel believes that she could, and should, have objected at that point,

but her decision was not the product of inadequate preparation or information.

At that point [the] State had not elected an offense and was not concluded with its case-in-chief. "[W]here [an] indictment charges that sex crimes occurred over a span of time, evidence of unlawful sexual contact between the defendant and the victim allegedly occurring during the time charged in the indictment is admissible." *State v. Rickman*, 876 S.W.2d 824, 828 (Tenn. 1994). The State, however, must elect at the close of its case-in-chief the particular offense for which it is seeking a conviction.

The victim would have been able to testify regarding other acts of oral penetration committed by Petitioner even if trial counsel had made a proper objection to the State's question. Therefore, even if the court did not allow the State to ask the specific question regarding how many times the victim was orally penetrated by Petitioner, Petitioner has failed to establish a reasonable probability that the result of his trial would have been different.

The record does not preponderate against the post-conviction court's findings. At trial, after the victim had testified about the first instance of oral rape, the following exchange took place:

Q.   What were you thinking after that?
A.   That he was going to do it again.
Q.   Okay. And did he?
A.   Yes, ma'am.
Q.   Can you tell us about that? What happened?
A.   When I was in the bedroom, we was in the bedroom.

At that point, the victim was crying, and a brief recess was taken. The State then asked the victim if there were more acts where Petitioner "put his stuff in her mouth." To which the victim replied: "Yes, ma'am." The State further questioned the victim: "Okay. Can you recall about how many times he actually put his stuff in your mouth?" The victim replied: "Quite a few times."

Trial counsel testified that she did not object when the State asked the victim about another instance of oral rape after the victim had testified about the first one because "this would have been an active oral penetration and, again, I thought the State was going to be permitted to elect an offense, an oral penetration incident. And so I didn't object when the question was about the active oral penetration." Trial counsel further felt that all of the instances of oral penetration could be admitted, and then the State would be required

- 17 -

to elect at the end of trial. Although trial counsel testified at the post-conviction hearing that she should have objected when the State asked the victim if there were more acts where Petitioner placed his penis in her mouth, this does not render trial counsel's performance deficient. As discussed above in this opinion, trial counsel used the testimony concerning the multiple incidents of oral penetration to cross-examine the victim about inconsistencies in her story. Trial counsel was able to get the victim to acknowledge that she could not recall certain details of the rape and that the victim had fabricated certain details. She additionally used the inconsistencies in the victim's version of events during closing argument.

We agree that trial counsel's decision not to object was a strategic one made with adequate information as a result of trial preparation, which will not be second-guessed by this court. *Hellard,* 629 S.W.2d at 12; *Toliver v. State*, 629 S.W.3d 913, 914 (Tenn. Crim. App. 1981); *Donald Craig and William Meadows, Jr.*, No. 85-10-III, 1985 WL 3866, at *3 (Tenn. Crim. App. Nov, 27, 1985)("There is no obligation on a lawyer to object at every opportunity."); *Daniel Muhammad v. State*, No. W2015-01923-CCA-R3-PC, 2016 WL 6915969, at *7 (Tenn. Crim. App. Nov. 22, 2016)(Trial counsel's decision not to object "because he did not want to annoy the jury" was a strategic one.). Trial counsel's performance concerning this issue was not deficient nor has Petitioner shown that he was prejudiced by trial counsel's performance. Petitioner is not entitled to relief on this issue.

### *Asking the Victim's Stepsister About Her Opinion of Petitioner's Character for Truthfulness*

Petitioner asserts that trial counsel was ineffective for asking the victim's stepsister on cross-examination about his character for truthfulness because trial counsel did not interview the victim's stepsister prior to trial to know what her testimony would be.

Concerning this issue, the post-conviction court made the following findings:

> At trial, the victim's stepsister was called as a witness for the prosecution. On her cross-examination, Trial Counsel asked the witness about her opinion of Petitioner's character for truthfulness. Trial Counsel testified that she had not interviewed this witness before trial because the witness avoided her. Trial Counsel testified that Petitioner strongly assured her that this witness would have nothing but good things to say about Petitioner, and Petitioner even wanted her as a witness for his defense.

> Trial Counsel testified that her question was based on a reliance on Petitioner's representations. This question was a strategic decision,

- 18 -

which will only be second-guessed if the decision was made without adequate preparation or information. *Hellard v.State*, 620 S.W.2d 4, 9 (Tenn. 1982). Even though Trial Counsel's efforts to contact the witness had failed, Petitioner assured Trial Counsel that her testimony would benefit his case. Without the ability to question the witness prior to trial, Trial Counsel relied on information provide[d] to her by her client. This decision was made with adequate information directly from Petitioner.

The record supports the post-conviction court's findings. Trial counsel testified that she was unable to speak with the victim's stepsister prior to trial because the victim's stepsister avoided her. However, Petitioner assured trial counsel that the victim's stepsister would have only good things to say about him, and he wanted trial counsel to call her as a witness and to "present whatever we could of her opinion of him." Based on Petitioner's assertions, trial counsel asked the victim's stepsister on cross-examination if she had an opinion as to whether Petitioner was a truthful or an untruthful person, and she replied: "Yes." On redirect examination, the prosecutor questioned the victim's stepsister further about Petitioner's truthfulness, and she testified that Petitioner "did his share of lying." She based her opinion on the following: "When he told me he stayed with a roommate and come to find out it was a girlfriend. He would tell me he's going over his grandmother's house and ended up at his ex-girlfriend's house."

Trial counsel's performance in this area was not deficient. She clearly relied upon Petitioner's assertions that the victim's stepsister's testimony would be favorable to him. *See Darryl D. Jackson v. State*, No. M2003-00730-CCA-R3-PC, 2004 WL 305785, at *3 (Tenn. Crim. App. Feb. 18, 2004)(Trial counsel's representation was not deficient when he relied upon information from the petitioner that was erroneous, and that information adversely affected the petitioner's ultimate sentence.); *Kevin B. Burns*, No. W2004-00914-CCA-R3-PD, 2005 WL 3504990, at *67 (Tenn. Crim. App. Dec. 21, 2005)(Trial counsels' decision not to further investigate Petitioner's background by hiring a mitigation specialist was reasonable based on information provided by Petitioner and his family.). Petitioner has failed to offer any evidence at the post-conviction hearing that trial counsel's performance in this area was anything other than a tactical decision made after adequate preparation for trial, which this court will not second-guess. Additionally, Petitioner is not entitled to the benefit of hindsight because he is not satisfied with the jury's verdict. *Hellard,* 629 S.W.2d at 9. He is not entitled to relief on this issue.

*Asking the Victim Why She Slept Downstairs*

Petitioner argues that trial counsel rendered deficient performance by asking the victim why she slept downstairs. He asserts trial counsel had not interviewed the victim prior to trial and did not know what the victim's answer was going to be. Concerning this issue, the post-conviction court found:

- 19 -

Petitioner alleges that Trial Counsel was ineffective for asking the victim why she slept downstairs. The victim testified that she slept downstairs because Petitioner told her to. Petitioner claims that this prejudiced his case because the oral rape occurred downstairs.

Trial Counsel testified that she had two reasons for asking this question. First, Petitioner assured Trial Counsel that the victim always had the choice to sleep downstairs and did so quite often. Second, [t]he victim's stepsister testified at [a] pre-trial hearing, in Trial Counsel's presence, that the victim chose to sleep downstairs. Trial Counsel testified that she asked this question based on these two pieces of information because the victim's family refused to cooperate with her.

This question was a strategic decision, which will only be second-guessed if the decision was made without adequate preparation or information. *Hellard v. State*, 620 S.W.2d 4, 9 (Tenn. 1982). Here, Trial Counsel's question was based on adequate preparation and the information that Petitioner and the victim's stepsister supplied.

Again, the record supports the post-conviction court's findings on this issue. Trial counsel testified at the post-conviction hearing that Petitioner assured her that the victim always had a choice as to where she slept and that she could either sleep in the room with her stepsister's two children or she could sleep downstairs. Petitioner assured her that the victim's stepsister would also testify that the victim had a choice where she slept. In fact, the victim's stepsister testified at a pretrial hearing that the victim had a choice where to sleep. At trial, the victim testified that she slept downstairs because Petitioner wanted her to. The victim's stepsister testified that she did not know if it was the victim's choice to sleep downstairs and that she did not recall previously testifying that it was the victim's choice to sleep downstairs. Trial counsel's performance in this area was not deficient. She clearly relied upon Petitioner's assertions and pretrial testimony by the victim's stepsister that it was the victim's choice to sleep downstairs. *Darryl D. Jackson v. State*, 2004 WL 305785, at *3; *Kevin B. Burns v. State*, 2005 WL 3504990, at *67. Again, Petitioner has failed to offer any evidence at the post-conviction hearing that trial counsel's performance in this area was anything other than a tactical decision made after adequate preparation for trial, which this court will not second-guess. *Hellard*, 629 S.W.2d at 9. Petitioner is not entitled to relief on this issue.

*Failure to Object When the State Asked the Victim About Counseling and Her Medication*

Petitioner argues that trial counsel acted in a deficient manner by failing to object when the State asked the victim about being in counseling and about taking medication. Concerning this issue, the post-conviction court found:

- 20 -

Petitioner alleges that Trial Counsel was ineffective for failing to object to a line of questioning pertaining to the victim being in counseling and taking medication. Trial counsel testified that she believes she missed an opportunity to object when she heard the question. Trial Counsel testified that she was prepared to subsequently object, but the victim testified that she had only been in counseling for the last two months. Trial Counsel testified that it was her understanding that the victim did [not] visit counseling until approximately two years after the incident occurred, which was only two months prior to trial.

Trial Counsel testified that she did not raise a subsequent objection. It was her strategic decision because she determined that the jury might determine that [the victim] was "troubled," thus diminishing her credibility. This strategic decision was made during the midst of trial and was based on Trial Counsel's experience and information available at the time. In fact, Trial Counsel testified that she planned on using the answers to her advantage.

The record does not preponderate against the post-conviction court's findings. Trial counsel admitted at the post-conviction hearing that she should have objected when the State asked the victim at trial about counseling and being on medication. However, trial counsel decided not to subsequently object after she realized that the victim had begun counseling approximately two months prior to trial, which was more than two years after Petitioner had allegedly sexually assaulted her. Trial counsel testified:

And so I decided that it appeared this had been a late effort to get [the victim] into counseling so that she could testify that she was in counseling. And also, there was the appearance that [the victim] might have been a troubled child and that perhaps for that reason her testimony might be less reliable. So I opted not to make a late objection, but I should have made an initial objection at that time.

Trial counsel agreed that instead of drawing attention to the testimony concerning counseling and medication, she used the testimony to strategically show that there was an appearance that the victim had been coached in her testimony prior to trial. Again, this court will not second-guess the tactical and strategic decisions of trial counsel made after adequate trial preparation. *Hellard*, 629 S.W.2d at 9. Petitioner is not entitled to relief on this issue.

- 21 -

*Failure to Argue During the Rule 412 Hearing That Petitioner Should Be Permitted to Introduce Evidence Concerning the Victim's Prior Sexual Behavior*

Petitioner alleges that trial counsel was ineffective for failing to introduce evidence at the Rule 412 hearing of "sexual interactions between the victim and [her stepsister's son] in order to show the victim's motive to make up the present charges." He further asserts that trial counsel should have subpoenaed the victim's stepsister and her stepsister's son, T.B., to testify at the Rule 412 hearing.

Concerning this issue, the post-conviction court found:

Petitioner alleges that Trial Counsel was ineffective by failing to argue that the victim's sexual encounters with her [stepsister's son, T.B.,] should be admitted at the Rule 412 hearing. Petitioner believes that this evidence would prove that the victim had a motive to allege that Petitioner committed these acts rather than another.

Trial counsel discussed these issues with Petitioner prior to trial. At the Rule 412 hearing held on December 10, 2013, Trial Counsel referenced two instances of sexual activity between the victim and her stepbrother. Trial Counsel testified that she argued that these encounters showed that the victim had knowledge of sexual matters. Trial Counsel did not raise the issue of motive at the hearing.

Pertaining to the first alleged occurrence, Trial Counsel testified that Petitioner had not witnessed these events and lacked firsthand knowledge. Petitioner testified that he did not, in fact, have firsthand knowledge of these events, and was only told afterwards by the victim's stepsister. Trial Counsel testified that the individuals that would have firsthand knowledge of these events were not available at trial and could not be located by Trial Counsel.

Pertaining to the alleged second occurrence, Trial Counsel testified that at the time of filing, she believed that direct evidence would be available to support her claim. However, Trial Counsel testified that this evidence never came to light. Petitioner testified at the November Post-Conviction hearing that he did, in fact, learn of these events from others after they occurred. Petitioner also testified that Trial Counsel informed him that his testimony would likely be inadmissible had he testified at the Rule 412 hearing.

Trial Counsel testified that she tried to subpoena witnesses with possible firsthand knowledge, but this was to no avail. Trial Counsel testified

that she did not have a good-faith basis for either alleging these events occurred or putting Petitioner on the stand to testify when there was nothing to substantiate the events. Trial Counsel testified that she does not recall whether Petitioner requested to testify at the Rule 412 hearing. Trial Counsel testified that, based on her experience, that the state would object to Petitioner's answers and she had no basis for admitting his testimony.

Trial Counsel's decision during the Rule 412 hearing [was a] strategic decision and thus will not be second-guessed by this court if it was the product of adequate preparation and information. Here, Petitioner told Trial Counsel that these events occurred. Trial Counsel adequately prepared and unsuccessfully attempted to subpoena witnesses that could have firsthand knowledge because Petitioner did not. Further, Trial Counsel used her experience and knowledge to determine that the witnesses available did not have firsthand knowledge of these events and therefore could not testify to their occurrences. Trial Counsel furthered her argument in good-faith based on the information available at the time of the Rule 412 hearing. Therefore, this court will not second-guess Trial Counsel's strategic decisions.

The record does not preponderate against the post-conviction court's findings. Trial counsel, in a motion pursuant to Rule 412 of the Tennessee Rules of Evidence concerning the victim's knowledge of sexual matters, argued that evidence of two alleged sexual encounters between the victim and T.B. and previous sexual encounters between the victim and one or more of her male relatives should be admitted at trial for the "purpose of explaining knowledge of sexual matters." At the Rule 412 hearing, trial counsel only presented proof of sexual interactions between the victim and two of her cousins in Chicago involving oral penetration. Trial counsel did not present any proof concerning sexual behavior between the victim and T.B. and that any such behavior was a motive for the victim to get Petitioner out of the house because Petitioner tried to keep the victim and T.B. apart after the sexual behavior was discovered. The trial court denied the Rule 412 motion finding in part that the victim did not demonstrate "sexual knowledge beyond her years for either the prior specific instances of conduct, or the alleged conduct with Defendant."

Trial counsel testified at the post-conviction hearing that she did not present proof at the hearing about the incidents between the victim and T.B. because she was unable to substantiate the claims. Petitioner did not witness any of the incidents and was told about them by the victim's stepsister. Petitioner testified at the post-conviction hearing that T.B. also told him about one incident where the victim exposed her genitalia to him. Trial counsel testified that the victim's stepsister avoided contact with her, and trial counsel unsuccessfully tried to subpoena the victim's stepsister for the Rule 412 hearing.

Trial counsel was unsure whether she attempted to subpoena T.B., but the victim's family avoided contact with trial counsel. She did not ask the victim at the Rule 412 hearing about the allegations because she "didn't think [she] had a basis to ask that question of [the victim]." Trial counsel testified that she did not call Petitioner to testify at the Rule 412 hearing about the incidents because his testimony would have been hearsay and not admissible.

Again, we agree with the post-conviction court that the decision by trial counsel not to argue at the Rule 412 hearing that the sexual incidents between the victim and T.B. were a motive to get Petitioner out of the house was a strategic one based on adequate preparation for trial, which this court will not second-guess. *Hellard*, 629 S.W.2d at 9. Additionally, Petitioner's assertion that trial counsel should have subpoenaed the victim's stepsister and T.B. to testify at the Rule 412 hearing as to exactly what occurred between the victim and T.B. is without merit because Petitioner did not call the two witnesses to testify at the post-conviction hearing. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

Petitioner has not proven his allegations of fact as to this issue by clear and convincing evidence. He has not demonstrated that trial counsel's performance concerning this issue was deficient in this area. Petitioner is not entitled to relief on this issue.

*Cumulative Error*

Petitioner argues that "the cumulative effect of the above listed instances of deficient performance warrants post-conviction relief." The cumulative error doctrine provides that "there may be multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but when aggregated have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76 (Tenn. 2010). For the cumulative error doctrine to apply, there must have been more than one error committed in the trial proceedings. *Id*. at 77. "In the post-conviction context, 'a petitioner cannot successfully claim he was prejudiced by [trial] counsel's cumulative error when the petitioner failed to show [trial] counsel's performance was deficient." *Tarrants Yvelt Chandler v. State*, No. M2017-01639-CCA-R3-PC, 2018 WL 2129740, at *10 (Tenn. Crim. App. May 9, 2018)(quoting *James Allen Gooch v State*, No. M2014-00454-CCA-R3-PC, 2016 WL 498724, at *10 (Tenn. Crim. App. Feb. 4, 2016).

Because we have not found any deficient performance by trial counsel, Petitioner has failed to establish that he is entitled to post-conviction relief on the basis of

cumulative error as a result of trial counsel's representation. Petitioner is not entitled to relief on this issue.

*Denial of Petitioner's Request for Funding for an Investigator*

Petitioner argues that "[b]y being denied funding for an investigator, [his] federal and state constitutional rights to due process were violated in this case." We note that Petitioner concedes in his brief that the post-conviction court was bound by Tenn. Sup. Ct. R. 13 § 5(a)(2), which provides: "In non-capital post-conviction proceedings, funding for investigative, expert, or other similar services shall not be authorized or approved." see *Davis v. State*, 912 S.W.2d 689, 695-97 (Tenn. 1995); *Johnny Rutherford v. State*, No. E1999-00932-CCA-R3-PC, 2000 WL 246411, at *18 (Tenn. Crim. App. Mar. 6, 2000) (quoting *Davis*, 912 S.W.2d at 696-97) ("Neither due process nor equal protection requires the state 'to provide expert services to indigent non-capital post-conviction petitioners.'"). Accordingly, the post-conviction court properly denied the petitioner's request for funding for an investigator, despite his indigency, as he is not facing capital punishment. Petitioner is not entitled to relief on this issue.

*Denial of Petitioner's Request to Call the Prosecutor as a Witness at the Post-Conviction Hearing*

Petitioner asserts the post-conviction court erred by denying Petitioner's request to call the trial prosecutor as a witness at the post-conviction hearing. Petitioner argues that the prosecutor could have testified as to what the State's response would have been if trial counsel had filed a motion in limine to limit the State's proof to only one incident of oral rape. Petitioner further alludes to the theory that the prosecutor could have revealed whether the victim was able to pinpoint a specific incident of oral penetration.

It is undisputed that Petitioner did not request that a subpoena be issued for the prosecutor to appear as a witness at any of the three hearings in the post-conviction court. There was a subsequent hearing after the hearing where post-conviction counsel announced that he wanted to call the prosecutor as a witness. At the hearing, post-conviction counsel announced that the prosecutor was out of town that day. The post-conviction court ultimately determined that Petitioner could not call the prosecutor because the proposed testimony was not relevant. Post-conviction counsel did not request to make an offer of proof at the subsequent hearing consisting of the testimony of the prosecutor. Post-conviction counsel's summary of what he hoped would be the witness's testimony, while obviously candid, is too speculative to be considered an offer of proof.

Without seeking compulsory process by way of a subpoena, and also by failing to at least attempt to make a proper offer of proof, this court is unable to conclude that the post-conviction court erred by ruling that the prosecutor would not be allowed to testify.

*Allen v. State*, 882 S.W.2d 810, 815-16 (Tenn. Crim. App. 1994)(quoting 89 A.L.R., Offer of Proof – Ruling – Error, §2 at 283 (1963); *Bacon v. State*, 215 Tenn. 268, 385 S.W.2d 107, 109 (Tenn. 1964); *State v. Smith*, 639 S.W.2d 677, 680 (Tenn. Crim. App. 1982); *Bruce S. Rishton v. State*, E2010-02050-CCA-R3-PC, 2012 WL 1825704, at *19 (Tenn. Crim. App. May 21, 2012). In essence, Petitioner's specific right to present witnesses through compulsory process was not violated because Petitioner did not use compulsory process.

Petitioner is not entitled to relief on this issue.

## Conclusion

For the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE