IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs December 10, 2024

**STATE OF TENNESSEE v. JEREMY JAMES DALTON**

**Appeal from the Criminal Court for Fentress County**
**No. 19-85     Zachary R. Walden, Judge[1]**

_____

**No. M2023-01588-CCA-R3-CD**

_____

Defendant was convicted of attempted first degree murder and sentenced to forty years in incarceration after stabbing his neighbor, the victim, several times. Defendant represented himself at trial and now represents himself on appeal. He raises a variety of issues including: (1) whether the evidence was sufficient; (2) whether the trial court erred in admitting the preliminary hearing testimony of the victim; (3) whether the trial court erred in denying the motion to suppress; (4) whether the trial court should have granted a continuance; (5) whether the trial court erred in excluding a statement; (6) whether the trial court improperly allowed a witness to use a "script"; (7) whether the State violated *Brady*, *Napue*, or *Giglio*; (8) whether the State improperly used Defendant's prior convictions for impeachment; (9) whether Defendant was denied access to court; (10) whether the trial court properly limited Defendant's use of an intake video; (11) whether the trial court properly instructed the jury; (12) whether the State committed prosecutorial misconduct; (13) whether Defendant was denied compulsory process; (14) whether the trial court should have recused itself; (15) whether the appellate record was transmitted in error; (16) whether the sentence is excessive; and (17) whether cumulative error requires reversal of the conviction. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which TOM GREENHOLTZ and KYLE A. HIXSON, JJ., joined.

Jeremy James Dalton, Whiteville, Tennessee, Pro Se.

_____

[1] Judge Walden presided over the post-trial matters in this case. The Honorable E. Shayne Sexton presided over pretrial and trial matters.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Jared Effler, District Attorney General; and Philip Kazee, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Fentress County Grand Jury indicted Defendant in January 2019 for the attempted first degree murder of his neighbor Luther Byrd. The indictment was based on a September 2018 incident at Mr. Byrd's home.

Prior to trial, Defendant was briefly represented by counsel until Defendant asked the trial court for permission to represent himself. Despite repeated admonitions from the trial court, Defendant insisted on proceeding pro se. Once in charge of his own defense, Defendant filed a bevy of pretrial motions and requests including a motion to exclude prior bad acts, a motion to suppress his statements, and a motion to suppress the preliminary hearing testimony of the victim. The trial court denied the motion to exclude the preliminary hearing testimony of the victim, finding that the victim passed away prior to trial from an illness unrelated to the injuries sustained in September 2018 and that the testimony was admissible under Tennessee Rule of Evidence 804(a)(4).

At the hearing on the motion to suppress, Defendant argued that his statement to police was "involuntary." The State introduced a signed waiver-of-rights form and a video of Defendant's interview during which he waived his *Miranda* rights. Defendant argued that a certificate of need filled out at "4:30 the next morning" indicated that he "lack[ed] capacity" to give the statement. Defendant acknowledged that he was not subject to the certificate of need and did not lack the capacity to waive his rights when he gave the statement. Despite these acknowledgments, Defendant insisted that his "mind was nowhere in this universe" when he gave the statement to police. The trial court denied the motion to suppress the statement, finding that Defendant's waiver was knowingly and voluntarily executed.

Defendant agreed to have elbow counsel at trial. The proof at trial indicated that on September 4, 2018, Defendant lived next door to the victim. Defendant did not have running water at his home and the victim and his mother let Defendant come to their home to get jugs of drinking water and to shower. On September 4, Defendant went to the victim's home to shower. Both the victim and his mother were at home.

Sometime during the evening of September 4, workers at the Fentress County Hospital notified officers that they received a stabbing victim. Once at the hospital, officers

- 2 -

talked to the victim, who was conscious but was bleeding heavily and had a knife sticking out of his head. The victim told police that the neighbor "had come to the residence to take a shower and just went off and started stabbing him." Defendant was arrested on a warrant in the "late, late night hours" that same day. Officers found him hiding in a briar thicket. Defendant had "superficial lacerations on his arm" and scrapes on his chest that officers thought came from briars. The arresting officers stated that some of the scrapes looked like they had started to heal. Officers did not see any evidence of knife cuts on Defendant's person.

Once at the jail, officers reviewed the admonition-of-rights form with Defendant, who waived his rights and spoke to police. He claimed that the victim and his mother were "serial killers" who tortured children with "[e]lectrodes hanging from trees." Defendant insisted that he was "doing [the officers'] job for [them]." Defendant admitted that he picked up a knife at the victim's home and used it to attack the victim but then claimed that he took the knife away from the victim.

A crisis worker evaluated Defendant at the jail. The crisis worker read the charges aloud to Defendant who recalled that they stemmed from his stabbing the victim in the throat, in the eye, and in the head.

The victim died prior to trial from an illness unrelated to the injuries he sustained in September of 2018. At trial, the State presented the victim's testimony from the preliminary hearing. Defendant objected to the introduction of this testimony, but the trial court overruled the objection, finding the victim was unavailable and that the introduction of the preliminary hearing testimony was proper under the circumstances.

At the preliminary hearing, the victim explained that he had known Defendant since he was fifteen when they played on a basketball team together. Defendant lived a "few hundred" yards away from the victim and his mother. The victim knew Defendant's "water had been cut off" so when Defendant regularly asked the victim to shower at his house the victim obliged, even allowing Defendant to collect drinking water in jugs to take to his home.

The victim recalled that on September 4, Defendant came over to his house sometime after dark to take a shower. Defendant yelled out from the bathroom to ask the victim to fix the mirror that fell off the bathroom wall. Defendant was partially undressed, wearing pants but no shirt. The victim walked into the bathroom to fix the mirror. As the victim entered the bathroom, Defendant exited the bathroom. Defendant returned to the bathroom shortly thereafter. The victim explained that Defendant left the bathroom long enough to walk "to the kitchen and then basically right back in." When Defendant returned to the bathroom, the victim noticed that there were clothes in the bathtub. The victim asked

Defendant if the clothes were his. Defendant "went off," asking the victim what he had done with his children. The victim explained that he was confused because he knew Defendant did not have any children. Defendant "reached and grabbed" the victim, placing him into a chokehold. Defendant then stabbed the victim on the left side of the throat several times before stabbing the victim in the back of the head. The knife, which Defendant had procured when he left the bathroom, penetrated the victim's head from the back. The point of the knife exited the victim's skull by the victim's left ear. The knife was lodged in the victim's head. Defendant exited the bathroom and grabbed the victim's mother's cane. As the victim exited the bathroom, Defendant hit the victim "[r]ight across the nose" with the cane at "full force."

After hitting the victim in the face with the cane, Defendant "just left the home." The victim went to the local hospital. Personnel at the hospital notified the police about the stabbing. The hospital flew the victim by helicopter to Knoxville. When the victim returned home from the hospital, he discovered a second knife in his home that he suspected Defendant used in the attack. He provided that knife to the police.

Defendant testified at trial. He admitted that he was a convicted felon with multiple convictions. Defendant admitted that he went to the victim's house that day to take a shower but claimed that there were clothes in the bathtub when he arrived. Defendant testified that the water was already running in the bathroom when he arrived, and it "looked like there was blood running out of the underwear [in the tub]." According to Defendant, when he asked the victim about the clothing, the victim came into the bathroom and "pulled that knife" on Defendant. Defendant testified that the victim "started striking at [him]." Defendant insisted that he had multiple cuts on his arm that were "two or 3 inches thick" from the victim's striking him with the knife. Defendant denied that the cuts could have been from the briars in the briar patch where he was found hiding at the time of his arrest. Defendant admitted that he stabbed the victim "three times" with the knife. However, Defendant claimed that he was "out of his mind," at the time of the incident. Defendant explained that he was a heavy drug user and that he had not slept for multiple days at the time of the incident.

At the conclusion of the jury trial, Defendant was found guilty of attempted first-degree murder. At a sentencing hearing, the trial court determined that several enhancement factors applied. Specifically, the trial court found that with Defendant's twenty-two prior felonies, "there are convictions or behavior that are in addition to those necessary to establish . . . the career offender range." The trial court also determined that the personal injuries inflicted upon the victim were particularly great and that a deadly weapon was employed during the commission of the offense. The trial court also found that the defendant acted with little hesitation where the risk to life was high, but the court did not give that factor much weight. However, the trial court determined that Defendant

inflicted serious bodily injury on the victim. The trial court did not apply any mitigating factors. The trial court deemed it necessary to protect society from possible future conduct by Defendant and found that there was "very little evidence that would support any indication that rehabilitation [was] possible." The trial court also determined that measures less restrictive had been applied unsuccessfully to Defendant in the past. The trial court ultimately sentenced Defendant to a maximum within-range sentence of forty years in confinement.

After the denial of a motion for trial, Defendant timely filed a notice of appeal. On appeal, Defendant raises multiple issues. We will address each one in turn.

## I.       *Sufficiency of the Evidence*

Defendant argues that the evidence is insufficient to establish guilt. Specifically, he argues that the trial court erred in denying the motion for judgment of acquittal because the State failed to prove premeditation and that he was "framed" with "fake evidence" and "false testimony." Defendant also argues that his actions were taken in self-defense. The State counters that the evidence "overwhelmingly" establishes Defendant's guilt.

When the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)); *see* Tenn. R. App. P. 13(e). The standard of review is the same whether a conviction is based on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citing *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Shackleford*, 673 S.W.3d 243, 250 (Tenn. 2023) (quoting *Hanson*, 279 S.W.3d at 275). Further, the State is afforded "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)).

The jury evaluates the credibility of the witnesses, determines the weight to be given to the witnesses' testimony, and reconciles all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence. *Dorantes*, 331

S.W.3d at 379.  A guilty verdict "accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory."  *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997) (citing *State v. Grace*, 493 S.W.3d 474, 476 (Tenn. 1973)).  This Court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury."  *Wagner*, 382 S.W.3d at 297 (citing *Bland*, 958 S.W.2d at 659).

To sustain a conviction for attempted first degree murder, the State had to show that Defendant acted with the intent to commit first degree premeditated murder and that either his "conduct constitute[d] a substantial step toward the commission of the offense" or that he "believe[d] the conduct [would] cause the result without further conduct."  T.C.A. §§ 39-12-101(a), 39-13-202(a)(1).  Premeditation "is an act done after the exercise of reflection and judgment.  'Premeditation' means that the intent to kill must have been formed prior to the act itself.  It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time."  *Id*. § 39-13-202(d).  Additionally, "[t]he mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation."  *Id*.  Premeditation "may be established by proof of the circumstances surrounding the killing."  *State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000).  These circumstances include, but are not limited to:

> the use of a deadly weapon upon an unarmed victim; the particular cruelty of a killing; the defendant's threats or declarations of intent to kill; the defendant's procurement of a weapon; any preparations to conceal the crime undertaken before the crime is committed; destruction or secretion of evidence of the killing; and a defendant's calmness immediately after a killing.

*State v. Davidson*, 121 S.W.3d 600, 615 (Tenn. 2003) (citing *Bland*, 958 S.W.2d at 660; *State v. Pike*, 978 S.W.2d 904, 914-15 (Tenn. 1998)).  This Court has also noted that the jury may infer premeditation from any planning activity by the defendant before the killing, evidence concerning the defendant's motive, and the nature of the killing.  *State v. Bordis*, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995) (citation omitted).  In addition, a jury may infer premeditation from a lack of provocation by the victim and the defendant's failure to render aid to the victim.  *State v. Lewis*, 36 S.W.3d 88, 96 (Tenn. Crim. App. 2000) *abrogated on other grounds by State v. Thomas*, 687 S.W.3d 223 (Tenn. 2024).  Whether premeditation is present in a given case is a question of fact to be determined by the jury from all of the circumstances surrounding the killing.  *Davidson*, 121 S.W.3d at 614 (citing *Suttles*, 30 S.W.3d at 261; *Pike*, 978 S.W.2d at 914).

The proof at trial established that Defendant went to the victim's house to shower, called the victim into the bathroom, left the bathroom to get a knife, and attacked the

unarmed victim without any provocation. Defendant stabbed the victim multiple times in the neck and head with a filet knife, eventually lodging the knife in the victim's head. Defendant left the house without helping the victim. Defendant admitted that he stabbed the victim. An officer and photographs of the victim's injuries confirmed that the victim arrived at the hospital with a knife sticking out of his head. This proof was sufficient to support a conviction for attempted first degree murder.

Defendant's complaints about the sufficiency of the evidence focus primarily on what he characterized as "fake" evidence and inconsistencies in the proof. He also argues that he acted in self-defense. The jury was instructed on self-defense. It was the jury's prerogative to evaluate and assess the credibility of the witnesses. The jury heard Defendant's testimony. Clearly by their verdict, the jury believed the State's version of the events and discredited Defendant's testimony. Defendant is not entitled to relief on this issue.

## II. *Preliminary Hearing Testimony*

Next, Defendant complains that the trial court improperly admitted the deceased victim's preliminary hearing testimony at trial. Specifically, Defendant argues that "similar motive and opportunity requisites of 804(b)(2) were not met" because his attorney did not object. The State counters that the trial court properly determined the testimony was admissible because the victim was unavailable.

Before trial, the State informed the trial court that the victim "passed away due to Covid-19" and asked the trial court to declare him an unavailable witness pursuant to Tennessee Rule of Evidence 804(a)(4). Defendant complained that he did not have an "opportunity and similar motive" to question the victim. The trial court determined that the victim's preliminary hearing testimony was admissible because the State "met its burden of showing unavailability" and that the "issues raised at the time of the testimony offered were sufficiently connected to what we are doing here in this case."

Generally, prior testimony is hearsay, defined as a statement, other than one made by the declarant while testifying, offered for the truth of the matter asserted. *State v. Jones*, 568 S.W.3d 101, 128 (Tenn. 2019); Tenn. R. Evid. 801(c). Hearsay is generally not admissible. Tenn. R. Evid. 802. However, under Tennessee Rule of Evidence 804, former testimony of an unavailable witness may be admissible under some circumstances. A witness is unavailable when the witness "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance by process." Tenn. R. Evid. 804(a)(5). Rule 804(a)(4) states the obvious: that a witness who "cannot be present or testify at the trial or hearing because of death" is unavailable. When the declarant is unavailable, the Rule against hearsay does not exclude former testimony, which is

"[t]estimony given as a witness at another hearing of the same or a different proceeding . . . , if the party against whom the testimony is now offered had both an opportunity and a similar motive to develop the testimony by direct, cross, or redirect examination." Tenn. R. Evid. 804(b)(1). This Rule applies to preliminary hearing transcripts. Tenn. R. Evid. 804, Advisory Comm'n Cmt. A trial court's decision to admit prior testimony is reviewed for abuse of discretion. *State v. Summers*, 159 S.W.3d 586, 597 (Tenn. Crim. App. 2004). The trial court's factual findings are binding on the appellate court unless the evidence preponderates against them, but the determination of whether a statement is hearsay or whether it fits into an exception to the rule against hearsay are questions of law reviewed de novo. *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015).

"Intertwined with the rules on the admissibility of hearsay is the constitutional right to confront witnesses." *Jones*, 568 S.W.3d at 128. The Sixth Amendment to the United States Constitution guarantees the accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Tennessee Constitution provides the corresponding right "to meet witnesses face to face." Tenn. Const. art. I, § 9. The same standards apply in interpreting a defendant's confrontation rights under the Tennessee and United States Constitutions. *See State v. Hutchison*, 482 S.W.3d 893, 905 (Tenn. 2016). The Confrontation Clause governs only testimonial hearsay, and it applies only to testimonial statements offered for the truth of the matter asserted. *State v. Dotson*, 450 S.W.3d 1, 63-64 (Tenn. 2014). Prior testimony is inadmissible under the Confrontation Clause unless the witness appears at trial or the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Jones*, 568 S.W.3d at 128-29 (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)). A trial court's determination regarding whether a witness is unavailable is reviewed for abuse of discretion. *Id.* at 129. Whether the admission of hearsay statements violated a defendant's confrontation rights is a question of law subject to de novo review. *State v. Davis*, 466 S.W.3d 49, 68 (Tenn. 2015).

"A preliminary hearing transcript 'is precisely the type of former testimony contemplated under [Rule 804(b)(1)].'" *State v. Bowman*, 327 S.W.3d 69, 88-89 (Tenn. Crim. App. 2009) (quoting *State v. Hatfield*, No. 03C01-9307-CR-00233, 1994 WL 102072, at *3 (Tenn. Crim. App. Mar. 29, 1994)); *see* Tenn. R. Evid. 804(b)(1), Advisory Comm'n Cmts. This is because "[i]n a preliminary hearing, as at trial, the primary issue is whether or not the defendant committed the offense." *State v. Shipp*, No. M2016-01397-CCA-R3-CD, 2017 WL 4457595, at *5 (Tenn. Crim. App. Oct. 5, 2017) (citing *State v. Howell*, 868 S.W.2d 238, 251 (Tenn. 1993); *State v. McGowen*, No. M2004-00109-CCA-R3-CD, 2005 WL 2008183, at *11 (Tenn. Crim. App. Aug. 18, 2005)). "Complete identity of the issues is not necessary," so long as the issues are sufficiently similar to give a similar motive for cross-examination. *Howell*, 868 S.W.2d at 251. "'[T]he Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. . . .'" *Davis*,

466 S.W.3d at 68 (quoting *United States v. Owens*, 484 U.S. 554, 559 (1988)). Indeed, "[c]ourts of this state have consistently upheld the admission of testimony from a preliminary hearing when the defendant had an opportunity to cross-examine a witness who was subsequently deemed unavailable." *State v. Warner*, No. M2016-02075-CCA-R3-CD, 2018 WL 2129509, at *17 (Tenn. Crim. App. May 5, 2019) (citing cases), *no perm. app. filed*.

The victim testified at the preliminary hearing. He died prior to trial. He was clearly unavailable. Defendant cross-examined the victim at the preliminary hearing, even asking the victim if he had ever seen Defendant get violent. The victim denied ever seeing Defendant get violent. In fact, the victim acknowledged that he was angry with Defendant. Defendant had a similar motive and opportunity to examine the witness at the preliminary hearing. The trial court did not err in admitting this testimony. Defendant is not entitled to relief on this issue.

### III.     Motion to Suppress

Defendant insists that the trial court erred by failing to continue the hearing on the motion to suppress and that the trial court erred in denying the motion to suppress. Without acknowledging that he failed to ask for a continuance, Defendant lists the standard of review on appeal of the continuance issue as "plain error review." Defendant claims he was coerced into making a statement and had "lost grip on reality" when he gave the statement, rendering the statement involuntary and unknowing. Defendant also argues that the trial court should have continued the hearing until the person who signed the certificate of need could be subpoenaed to testify. The State argues that Defendant waived the continuance issue because he failed to ask for one and that the trial court properly denied the motion to suppress because the Defendant voluntarily waived his rights.

Initially, we note that Defendant failed to ask for a continuance for the hearing on the motion to suppress. As a result, any issue with regard to the trial court's failure to grant a continuance is waived. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). We likewise decline to review the alleged error for plain error. *See State v. Gooch*, No. M2022-01395-CCA-R3-CD, 2024 WL 2814624, at *4 (Tenn. Crim. App. June 3, 2024) ("To be clear, a party seeking plain error relief must generally raise and argue the issue in the party's briefing, just as the party would do with all other issues in the ordinary course of an appeal." (citation omitted)), *perm. app. denied* (Tenn. Nov. 20, 2024).

As to the denial of the motion to suppress, a "trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *State v.*

*Odom*, 928 S.W.2d 18, 32 (Tenn. 1996). The party prevailing in the trial court "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Bell*, 429 S.W.3d 524, 529 (Tenn. 2014). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. We review the trial court's application of the law to the facts de novo without a presumption of correctness to the trial court's conclusions of law. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001).

Here, the trial court determined that Defendant voluntarily waived his rights. Of course, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. The Fifth Amendment privilege against self-incrimination is applicable in state prosecutions by virtue of incorporation through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). Additionally, in Tennessee, "the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9.

To protect the right to remain silent and in order "to dispel the compulsion inherent in custodial surroundings," an in-custody suspect

> must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda v. Arizona*, 384 U.S. 436, 458, 479 (1966). After these warnings are given and an opportunity for exercising the rights afforded, a suspect may "knowingly and intelligently" waive the rights. *State v. Climer*, 400 S.W.3d 537, 557 (Tenn. 2013) (quoting *Miranda*, 384 U.S. at 479). A valid *Miranda* waiver has two distinct dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (citations omitted); *Climer*, 400 S.W.3d at 564-65. The State bears the burden of proving a waiver of *Miranda* rights by a preponderance of the evidence. *Climer*, 400 S.W.3d at 564 (citing *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010)).

In this case, the trial court denied the motion to suppress after determining Defendant knowingly, intelligently, and voluntarily waived his constitutional rights before speaking to the police. The proof at the hearing on the motion showed that the officers informed Defendant of his rights and that Defendant signed a form acknowledging that he understood those rights prior to his execution of the waiver and the statement. The video of Defendant's interview with police confirmed the trial court's conclusion that nothing indicated the waiver was coerced. Defendant's argument that the "certificate of need shifted dynamics" is not applicable because the certificate of need did not exist at the time of the waiver of rights or interview. Defendant alludes to his use of or influence by "drugs," "medication," and "intoxication" without any proof that he was under the influence or that his waiver of rights was somehow affected. The evidence does not preponderate against the trial court's denial of the motion to suppress. Defendant is not entitled to relief on this issue.

### IV. *Admission of Excluded Statement*

Next, Defendant complains that he was not permitted to question an officer about an out-of-court statement made by the victim. Specifically, Defendant argues that the trial court erred in refusing to allow admittance of the victim's police interview under Rule 806 of the Tennessee Rules of Evidence. The State argues that when the State objected at trial, the trial court properly determined that the statement was inadmissible hearsay. Moreover, the State insists that Defendant has waived this issue on appeal because he failed to include the victim's statement in the record.

We agree with the State that Defendant has waived this issue on appeal. Tennessee Rule of Appellate Procedure 24(b) tasks the appellant with preparing "a transcript of such part of the evidence of proceedings as is necessary to convey a fair, accurate, and complete account of what transpired with respect to those issues that are the bases of appeal." "When the record is incomplete or does not contain the proceedings relevant to an issue, this Court is precluded from considering the issue . . . [and] must conclusively presume that the ruling of the trial court was correct in all particulars." *State v. Stack*, 682 S.W.32d 866, 876 (Tenn. Crim. App. 2023) (citing *State v. Miller*, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987)). Defendant can hardly establish that the trial court abused its discretion in admitting the out-of-court statement if the challenged statement is not included in the record on appeal. At the end of his argument on this issue, Defendant casually claims this is "'plain error' due to its contents not in the record." To the extent that Defendant wishes this Court to review

the issue for plain error, we decline.  All five factors for plain error review must be met before this Court will conclude that plain error exists and the absence of the statement in the record means that at least one, the record does not "clearly establish what occurred in the trial court," cannot be met.  *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)).  This issue is waived.

## V.      Use of "Script" by a Witness

Defendant complains that the trial court erred in failing to "give defense a hearing on a 'script' found on [Officer Jerry Mifflin] while testifying" and erred by allowing the "script" to be kept as a work product.  Defendant also asks this Court to determine if there was "any other plain error involved."  The State argues that Defendant has waived the issue because he failed to identify "any law or rule of evidence which he feels the court violated, and he has failed to support this claim with any citations to legal authority."

We agree with the State.  Rule 10(b) of the Court of Criminal Appeals cautions that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."  Here, Defendant claims the trial court's actions constituted a "farce and mockery of justice" and that the trial court should have granted a mistrial without pointing to any specific legal authority to support his claims.  This issue is waived.

## VI.      State's Suppression of Material, Exculpatory, and Giglio Material

Defendant next challenges whether the State withheld evidence.  Specifically, Defendant frames his issue as follows: "Were *Brady*[*v. Maryland*, 373 U.S. 83, 87 (1963)], *Napue*[*v. Illinois*, 360 U.S. 264 (1959)], *Giglio*[*v. United States*, 405 U.S. 190 (1972)] violations committed?"  To support his issue, Defendant claims that a "great deal of evidence appears in the record that defense never received and several *Brady* issues raised in amendment."  Defendant points to "x-rays" of the victim, psychiatric records, pharmacy records, the "script" used by Officer Mifflin, the statement of Georgia Byrd, blood testing, and the statement of Jared Effler.  The State insists that Defendant has waived this issue for failing to present a legal argument.

While Defendant references *Brady* in his brief, and cursorily outlines the standard of review that applies to *Brady* issues, Defendant's brief does not contain any legal argument to show how the allegedly withheld evidence satisfies either prong of *Brady*.  To that end, Defendant has waived this claim for failing to support his issue with argument.  Tenn. Ct. Crim. App. R. 10(b).  Moreover, Defendant only references *Napue* and *Giglio* in his issue statement, without providing full citations to either case or explaining how either case applies to Defendant's issue.  This issue is waived.

## VII. *State's Use of Prior Convictions for Impeachment*

Defendant argues that the State and the trial court improperly used his prior convictions to impeach his testimony and that the trial court erred in instructing the jury on impeachment. Specifically, Defendant claims that the trial court held a 404(b) hearing where it was decided "no convictions would be used against [him]" but acknowledges that the transcript of this hearing is "missing" from the record. The State argues that Defendant has waived the issue because he did not include the transcript in the record on appeal and failed to raise this issue in his motion for new trial.

Defendant admits that there is no transcript in the record from a 404(b) hearing. Moreover, our review of Defendant's 136-page handwritten motion for new trial reveals that he did not raise this issue in his motion. Therefore, this issue is waived. *See* Tenn. R. App. 24(b); Tenn. R. App. P. 3(e). Defendant also casually mentions Rules 608 and 609 of the Tennessee Rules of Evidence in his argument section with regard to this issue. To the extent that he is arguing that the trial court somehow erred by failing to hold a hearing pursuant to either of these rules of evidence, the issue is waived for the same reasons. Defendant is not entitled to relief on this issue.

## VIII. *Denial of Access to Courts*

Defendant next insists that he was somehow denied access to the courts. Specifically, he claims that he tried "multiple times" to "obtain appellate review of issues material to the trial mechanism/verdict but to no avail." The State disagrees, arguing that Defendant filed various motions and that the trial court ruled on the motions.

Defendant chose to proceed pro se, despite the advice of the trial court. The constitutional right of access to the courts "includes the requirement that prison authorities assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *State v. Goodwin*, 909 S.W.2d 35, 42 (Tenn. 1995) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)) (internal quotation marks omitted). This requirement is met when an inmate is provided with either the "legal tools necessary for [the preparation of] a defense or the assistance of an attorney." *Id.* at 42 n.1 (citing *Martucci v. Johnson*, 944 F.2d 291, 295 (6th Cir. 1991)). A review of the technical record leaves no doubt that Defendant had an "adequate opportunity to present claimed violations of fundamental constitutional rights" to the trial court facilitated by access to elbow counsel and access to legal tools necessary to prepare himself for trial. *Bounds*, 430 U.S. at 825. Defendant filed a multitude of motions—enough to fill more than one volume of the technical record— prior to trial and the trial court ruled on each of those motions. His complaints now on

appeal indicate that he is dissatisfied because he did not receive the relief he requested. This does not mean that he was denied access to courts. Defendant has not established that he was denied access to the courts. Therefore, he is not entitled to relief on this issue.

## IX.    *Exclusion of Intake Video*

Defendant argues that the trial court erred in "first allowing admittance of [an] intake video into evidence then ruling it inadmissible at a later point in trial." Specifically, Defendant claims that the trial court admitted the intake video into evidence during Defendant's cross-examination of a State witness during the State's case-in-chief but later ruled it inadmissible when he tried to admit it during his own testimony. The State argues that Defendant waived the issue for failing to raise it in a motion for new trial and that any error was harmless because the trial court admitted photographs from the video into evidence.

At trial, Defendant was cross-examining an officer. The trial court permitted Defendant to present a video "accurately" representing his intake at the jail. The witness authenticated the video and the trial court told Defendant he could admit it as an exhibit. Defendant did not move to do so. Later, during Defendant's own testimony, he tried to introduce the video to show the "wounds" he received from the victim. Defendant testified that the State provided the video during discovery but did not tell the trial court that it was the same video he used earlier. The trial court ruled that the video was inadmissible. Defendant did not ask to enter it as an exhibit for identification purposes or as an offer of proof. The trial court permitted Defendant to admit photographs captured from the video to help depict his injuries to the jury.

Without citing any law other than two blanket statements on the standard of review or making any legal argument to support his issue, Defendant complains at length about the trial court's ruling that his intake video was inadmissible. His brief on this issue is inadequate; this issue is waived. Tenn. Ct. Crim. App. R. 10(b). Moreover, he failed to raise this issue in a motion for new trial and failed to include the video in question in the record on appeal. Tenn. R. App. P. 24(b); 3(e). This issue is waived.

## X.    *Jury Instructions*

Defendant challenges the trial court's jury instructions. Specifically, he argues that the trial court gave an improper "true man" instruction "omitting the right to use deadly force," improperly instructed the jury on premeditation, and improperly instructed the jury on "intoxification [sic]" as a defense. The State counters that the challenge to the jury instructions is waived for "failing to adequately brief" the issue.

Defendant's brief on this issue is certainly not perfect. While Defendant provides the necessary citations to the record and provides general citations to statute (*i.e.,* Tennessee Code Annotated section 39-11-611) and some cases, he fails to articulate via argument exactly how the jury instructions were improper. Defendant makes a blanket statement that the jury instruction on premeditation was "improper and misleading skewing the culpable mental state with deliberation required of premeditation which are separate elements." Defendant also argues that the trial court "improperly instruct[ed the jury] that no time preexist in the mind for the purpose when cases . . . state time should be enough to permit 'careful weighing' and more than a 'split second' thus misleading and misstating the law." Defendant also failed to object at trial to the jury instructions. Therefore, on appeal, he must establish plain error.

A defendant is entitled to a complete and correct charge of the law. *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990). Accordingly, trial courts have the duty to give "a complete charge of the law applicable to the facts of the case." *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (citing *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986)). When reviewing challenged jury instructions, we must look at "the charge as a whole in determining whether prejudicial error has been committed." *In re Estate of Elam*, 738 S.W.2d 169, 174 (Tenn. 1987); *see also State v. Phipps*, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). Here, a review of the jury instructions reveals that the trial court informed the jury that Defendant could act in self-defense and even stated that Defendant "would also have no duty to retreat before using force likely to cause serious bodily injury" after the trial court determined that Defendant was not engaged in illegal activity. The trial court provided the statutory definitions for premeditation as found in Tennessee Code Annotated section 39-13-202(e) and informed the jury that "intoxication is relevant to the essential element of [] Defendant's culpable mental state." The trial court went on to tell the jury that if "you find that [] Defendant was intoxicated to the extent that he could not have possessed the required culpable mental state, then he cannot be guilty of the offense charged." Defendant has not shown that the trial court breached a clear and unequivocal rule of law. He is not entitled to plain error relief.

### XI. *Prosecutorial Misconduct and Perjured Testimony*

Defendant argues that the State committed prosecutorial misconduct by intentionally using "fake evidence" and "false testimony" at trial. To support this claim, Defendant points to allegedly inconsistent statements in an officer's testimony that he describes as "perjury." The State responds that Defendant attempted to impeach the officer on cross-examination and the officer clarified discrepancies in his testimony so there was no "false testimony" that the State should have notified Defendant or the court about and therefore no prosecutorial misconduct.

At trial, Defendant tried to impeach an officer's testimony about whether he went to the victim's home on the night of the incident. Specifically, Defendant questioned Officer Jerry Mifflin about when he went to the victim's house. Defendant asked Officer Mifflin if he was "near that place that night." The officer replied that he was "[a] hundred percent positive" that he was not there that night. Defendant then presented the officer with his own preliminary hearing testimony during which he stated that he was at the victim's house "later the night - - after those photos were taken." At trial, Officer Mifflin clarified that he meant the night after the attack. Defendant told the trial court that the officer "lied on the stand and perjured himself." The trial court overruled the objection.

We note that Defendant's brief on this issue contains citations to authority and citations to the record but little argument. Despite this obvious deficiency, we will address the issue. A conviction obtained by the knowing use of perjured witness testimony violates due process, even if the testimony only bears on witness credibility. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *see State v. Spurlock*, 874 S.W.2d 602, 617-18 (Tenn. Crim. App. 1993). Of course, the State has a responsibility not to present false testimony and "an affirmative duty to correct false testimony presented by State's witnesses." *State v. Watkins*, No. M2017-01600-CCA-R3-CD, 2019 WL 1370970, at *11 (Tenn. Crim. App. Mar. 26, 2019) (citing *Spurlock*, 874 S.W.2d at 617), *no perm. app. filed*. For a defendant to prevail on a claim that the State failed to correct false testimony, the defendant must prove: "'(a) that false or perjured testimony was admitted at trial, (b) that the [S]tate either knowingly used such testimony or knowingly allowed it to go uncorrected, and (c) that the testimony was material and deprived him of a fair trial'" by a preponderance of the evidence. *Id.* (quoting *Bell v. State*, No. 03C01-9210-CR-00364, 1995 WL 113420, at *8 (Tenn. Crim. App. Mar. 15, 1995)). If testimony is determined to be false, "[a] new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury[.]'" *Giglio*, 405 U.S. at 154 (quoting *Napue*, 360 U.S. at 271).

When looking at the testimony Defendant claims is perjured and the testimony presented at trial, Defendant has not shown by a preponderance of the evidence that the testimony was false. Moreover, Defendant has failed to explain how any alleged inconsistency in Officer Mifflin's testimony was material or deprived him of a fair trial. Defendant admitted that he stabbed the victim. The officer's testimony about when he went to the victim's house has no bearing on Defendant's guilt or innocence. Defendant is not entitled to relief on this issue.

### XII. Denial of Compulsory Process

Defendant argues that he was denied "compulsory process" because an "unconstitutional subpoena process was initiated by the trial court which prevented evidence from being obtained" and "prevented material witnesses from appearing at trial

and suppression hearings." Specifically, Defendant complains that he was required to "go through a clerk to subpoena people." The State insists that the issue is without merit because he was permitted to subpoena people.

Prior to trial, Defendant filed scores of motions, one of which asked the trial court to provide him with "40 blank, but signed" subpoenas so that Defendant could issue them "for compelling and collecting materials and witnesses" at trial. Defendant also filed a motion asking for the trial court to issue subpoenas for twenty-seven different sets of documents. The State asked the trial court to issue subpoenas in compliance with Tennessee Rule of Criminal Procedure 17, rather than the methods suggested by Defendant. The trial court entered an order telling Defendant that he was "entitled to request the issuance of any and all proper subpoena request[s]." The trial court also ordered the clerk to issue "all subpoenas requested by [Defendant]." Several of the people and organizations Defendant sought to subpoena filed motions to quash the subpoenas. The trial court granted those motions.[2]

As noted by Defendant, under the Sixth Amendment to the United States Constitution, which is applicable to the states via the Fourteenth Amendment, an accused has the right to compulsory process in order to obtain witnesses favorable for the defense. *State v. Hester*, 324 S.W.3d 1, 93-94 (Tenn. 2010) (appendix) (citing *Faretta v. California*, 422 U.S. 806, 816 (1975)). Similarly, the Tennessee Constitution affords a defendant facing criminal prosecution the right "to have compulsory process for obtaining witnesses in his favor." Tenn. Const. art. I, § 9. Regardless, a criminal defendant's right to compulsory process is not without limits; instead, "'the constitutional right to compulsory process requires such process for, and only for, competent, material, and resident witnesses whose expected testimony will be admissible.'" *State v. Smith*, 639 S.W.2d 677, 680 (Tenn. Crim. App. 1982) (quoting *Bacon v. State*, 385 S.W.2d 107, 109 (Tenn. 1964)).

As is clear from the record, Defendant was able to subpoena both individuals and documents prior to trial. Defendant was not denied compulsory process, therefore he is not entitled to relief on this issue.

*XIII. Recusal*

Defendant argues that he was denied the right to an impartial judge and that the judge should have recused himself. The State argues that Defendant waived the issue for failing to move for recusal of the trial court.

---

[2] Defendant does not challenge the trial court's decision to quash certain subpoenas prior to trial. Therefore, any claim that this ruling was in error is now waived on appeal. *State v. Allen*, 593 S.W.3d 145, 154 (Tenn. 2020).

Defendant's brief lists various allegations of what he deems biased behavior by the trial court. However, Defendant has waived this claim for failing to ask the trial judge to recuse himself. There is no motion for recusal in the record. Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

## XIV. Sentencing

Defendant challenges his sentence on appeal. The State argues that Defendant has waived this issue for failure to cite the record, cite authority, or make an argument.

Defendant's entire argument on this issue consists of the following question: "Is [the] sentence excessive or in plain error?" Such a blanket question with no additional support from citations to the record, citations to authority, or argument is inadequate. This issue is waived. Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b). Although the courts give pro se litigants "a certain amount of leeway in drafting their pleadings and briefs," we remind Defendant that he is expected to comply with the same substantive and procedural rules represented parties must observe despite his incarceration and pro se status. *Hessmer v. Hessmer*, 138 S.W.3d 901, 903-04 (Tenn. Ct. App. 2003) (incarcerated pro se plaintiff obligated to see that summonses were timely issued and served in a manner consistent with the rules of civil procedure); *State v. Sprunger*, 458 S.W.3d 482, 491 (Tenn. 2015); *State v. Walker*, No. W2012-01593-CCA-R3-CD, 2013 WL 3968804, at *3 (Tenn. Crim. App. Aug. 1, 2013) (pro se defendant waived all issues except sufficiency of the evidence and sentencing based on failure to conform to the Rules), *no perm. app. filed*.

## XV. Inaccurate Appellate Record

Defendant argues that the appellate record was compiled and transmitted "in error." Defendant then lists dates he alleges correspond to "various transcripts" and at least one exhibit. He makes several complaints about the record including but not limited to complaints about the time it took to receive the record and an allegation that the "record has all fake evidence." Defendant does not supply any argument to support his "issues" with the record or citation to authority. This issue is waived. Tenn. Ct. Crim. App. R. 10(b).

## XVI. Cumulative Error

Because we have found no error, we need not determine if Defendant is entitled to relief based on cumulative error. This issue is without merit.

**CONCLUSION**

Based on the foregoing reasoning and authorities, the judgment of the trial court is affirmed.

s/  Timothy L. Easter
TIMOTHY L. EASTER, JUDGE